Tucker v. Allen.

## E. M. TUCKER. v. STEPHEN H. ALLEN.

1. DEED; CONVEYANCE; *When Executed in Blank, as to Grantee.* Where a deed was executed in blank as to the grantee, with the understanding that the deed should afterward be filled up and delivered to some person as grantee whom a certain railroad company should designate, and afterward, and in the absence of the grantor, the deed was so filled up and delivered to a grantee who had full knowledge of the facts — *assumed*, by the supreme court, but without deciding the question, that such deed, when so filled up and delivered, was void.

2. VOID DEED *Becomes Valid by Ratification.* A deed void when delivered may be ratified and confirmed by the grantor, after he has full knowledge of all the facts, by any words or acts of his which show a clear intention on his part that the deed shall be considered as having been properly executed and delivered and as conveying the title to the property.

3. ———— Under the facts of this case, *held*, that such a deed so executed and delivered was afterward ratified.

4. CONDITIONS; PUBLIC POLICY; *Stipulation Not to Build Depot.* One of the conditions of a deed was, that no railroad depot should be built at a certain place within one year. No depot was built at such place within that time, and all the other conditions of the deed were strictly fulfilled, and everything connected with the deed was fully executed, and there was nothing to show that any injury or inconvenience ever resulted to any person or to society because no depot had been built at the place designated : *Held,* that neither the grantor in said deed, nor any person (with notice) claiming under him, can avoid said deed, merely because of a supposed illegality in inserting in said deed said conditions not to build said depot.

5. DESCRIPTION OF PROPERTY; *Certainty; Terms of Deed.* Where property is conveyed by deed, a description of the property which can be made certain within the terms of the deed, and which is afterward made certain according to the terms of the deed, and to the satisfaction of all parties interested, and which then rests wholly in record evidence, is sufficient.

*Error from Linn District Court.*

EJECTMENT, brought by *Allen* as plaintiff, to recover possession of Lot 5 in Block 129, city of Pleasanton. Both parties claimed title in fee. The facts are fully set out in the opinion. The district court, at the May Term 1874,

found in favor of *Allen*, and gave judgment in his favor, and *Tucker*, defendant, appeals, and brings the case here on error.

*Thacher & Stephens*, for plaintiff in error.

*Stephen H. Allen*, defendant in error, for himself.

The opinion of the court was delivered by

VALENTINE, J.: This was an an action in the nature of an action of ejectment, brought by Stephen H. Allen, defendant in error, (plaintiff below,) against E. M. Tucker. The action was tried by the court below without a jury, on the following agreed statement of facts, to-wit:

1st. The land in dispute has a common title in Morgan Fickes, under whom both parties claim.

2d. The title of plaintiff Allen is a quitclaim deed from Fickes and wife, dated September 21st 1870, a copy of which is herewith presented, together with the register of deed's certificate of record, marked "A," and made a part of these facts.

3d. It is further admitted, that one William Cameron and Octave Chanute duly platted into blocks, lots, streets and alleys, as part of the original town-site of Pleasanton, the lands in the said quitclaim deed mentioned, and filed the same in the office of the register of deeds, September 2d 1869, and that the lot in the petition described is an odd-numbered lot in said plat of said town-site, so filed and recorded. Afterward, October 4th 1871, the plaintiff signed said plat and recognized it.

4th. The title of defendant Tucker is under a deed from Fickes and wife to Octave Chanute, dated June 7th 1869, which conveyance, together with the register of deeds' certificate of record, is herewith presented, marked "B," and made part of these facts. And it is agreed and admitted that all the conditions and limitations in said deed were fulfilled within the time therein provided; that said deed was delivered by said Fickes before the insertion of the name of the grantee therein mentioned, and no grantee was mentioned therein at the time of the delivery. The deed was handed by Fickes to C. C. Smith, resident engineer of the company, with verbal directions to the company to insert in the blank

21—16 KAS.

whosesoever name the railroad company mentioned in the deed should desire, and the president of the company told Mr. Chanute that for his extra services in behalf of the company it desired him to take the lands, and his name was thereupon inserted in the deed by himself, with the full assent of the railroad company.

5th. The other half of the lands in the conveyances to said Chanute and said plaintiff mentioned were conveyed by warranty deed, July 24th and August 14th 1869, by Fickes and wife to William Cameron, which was duly recorded in said July and August in the office of the register of deeds in said county.

6th. Said Chanute, prior to the commencement of this action, conveyed by warranty deed to the defendant herein the lot in the petition mentioned, who took possession thereunder, and still holds possession thereof.

7th. The consideration for the deed from Fickes to Chanute is therein recited.

8th. The land and lots mentioned in the quitclaim deed of Fickes to plaintiff at the time of conveyance were worth about ten thousand dollars.

9th. Fickes, shortly after the execution and delivery of the deed "B," knew that it was filled with Mr. Chanute's name, and also knew that the town-site of Pleasanton was being platted, surveyed and laid out by all the parties in interest, including Mr. Chanute, and made no objection thereto, and assented to such survey and platting.

10th. Lots 15 and 17 in block 121, mentioned in the exception to the quitclaim deed from Fickes to plaintiff, were bought by Fickes after such platting and laying out of said town-site, and are in the lands mentioned in said deed from Fickes to Chanute, and were bought by said Fickes in the fall of 1869, of one H. C. Swift, who was the surveyor in laying out said town-site, said Swift being the agent of one or more lot-owners in Pleasanton.

11th. When Fickes gave the quitclaim deed to plaintiff, he (Fickes) stated to him that he made no claim to any of said lands in the deed mentioned, except a one undivided-half of two strips of land, one fifty feet wide on the west side, and one of one hundred feet wide on the east side of the right of way of the Missouri River, Fort Scott & Gulf Railroad Company through said lands, which said strips were not laid out into lots, or included in any blocks, and were designated on said plat of said town-site as "railroad depot

grounds." Plaintiff said to Fickes, " I want the deed to cover all the lands, so that I can use it against other interests besides those strips which I think you have." Fickes said, "I don't care about Chanute being bothered, as he has n't used me just right." This reference to Mr. Chanute by Fickes was in answer to something Mr. Allen said to Fickes touching Chanute's interest in the lands. Fickes also stated to plaintiff that he would n't ever thought of conveying any interest in those strips if it had n't been for the difference between himself and Mr. Chanute.

12th. The Missouri River, Fort Scott & Gulf Railroad Company is a corporation duly incorporated and existing under the general incorporation law of 1865, (being chapter 44 of the laws of that year;) and during the years 1869 and 1870 Mr. Chanute was the chief engineer of said company. The consideration in said quitclaim deed "A" is correctly recited.

13th. Fickes, after he learned that Mr. Chanute was grantee in the deed, stated to Mr. Chanute that he had sold the other half of the land to Mr. Cameron, who would be a good man to push the town.

#### DEED MARKED "A."

THIS INDENTURE, made this 21st day of September 1870, between Morgan Fickes and Minerva Fickes his wife, of the county of Linn, and State of Kansas, of the first part, and Stephen H. Allen of the same place, of the second part, witnesseth: That the said parties of the first part, in consideration of the sum of three hundred dollars to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, hath bargained, sold, remised, released and quitclaimed, and by these presents do bargain, sell, release, remise and quitclaim unto the said party of the second part, and to his heirs and assigns forever, all our and each of our right, title, and interest, estate, claim and demand, both at law and equity, and as well in possession as in expectancy, of, in and to the following-described premises or pieces and parcel or parcels of land, to-wit: The N.W. $\frac{1}{4}$ of the S.W. $\frac{1}{4}$, and the S. $\frac{1}{2}$ of the N.W. $\frac{1}{4}$ of section 31, in township 21, range 25, lying and being in the town of Pleasanton, county of Linn, and state of Kansas, and all lots, blocks, streets and alleys, strips and pieces of land therein contained, saving and excepting any part of the same heretofore deeded by the said parties of the first part to William Cameron; and lots number 15, 16, 17 and 18, in block 121; and lots num-

ber 6 and 34, in block 122; and lots numbered 1, 2, and 3, in block 139—together with all and singular the hereditaments and appurtenances thereunto belonging.

In witness whereof we have hereunto set our hands and seals the day and year first above written.

MORGAN FICKES. [SEAL.]<br/>
MINERVA FICKES. [SEAL.]

[Said deed was duly stamped and acknowledged, and was duly recorded on the 21st of September 1870.]

### DEED MARKED "B."

KNOW all men by these presents, that Morgan Fickes and Minerva Fickes his wife, parties of the first part, do by these presents, for and in consideration of the sum of one dollar in hand paid, and the further considerations hereinafter specified, grant, bargain, sell and convey unto *Octave Chanute*, of Jackson county, Missouri, under the several limitations and conditions and restrictions hereinafter provided, the one-half of (as is hereinafter designated) the N.W.¼ of the S.W.¼, and sixty acres off the east end of the S.½ of the N.W.¼ of section 31, of township 21, of range 25, in Linn county, state of Kansas, together with the appurtenances thereunto belonging; and we the said parties of the first part, warrant that we are seized of a good and indefeasible fee-simple title to the real estate hereby conveyed. The parties of the first part agree, and it is one of the conditions of this deed, to cause, on or before the completion of the depot hereinafter named, to have the land hereinbefore described surveyed, laid out and platted in village or town lots, with streets and alleys, by a competent surveyor, and that said lots shall be by said surveyor numbered, and the lots being designated on the plat of said survey by odd numbers, shall vest in the grantee an indefeasible fee-simple title, and the lots being designated on said plat by even numbers, the title to remain in the grantors. Now the conditions, limitations, and provisions, and the only uses and purposes for which the real estate aforesaid is conveyed, are as follows, to-wit: Whereas, the parties of the first part desire to secure the location and construction of a good and substantial freight and passenger depot on the line of the Missouri River, Fort Scott & Gulf railroad in the vicinity of the Round Mound which is situated in the west line of section 31, in town 21, range 25 in said Linn county: Now, in order to secure this object, it is herein agreed and provided, on the part of said grantors, constituting the parties of the

first part, that for and in consideration that the said grantee, his, her, or their heirs, executors, administrators or assigns, shall cause said Missouri River, Fort Scott & Gulf Railroad Company to locate and construct a good and substantial passenger and freight depot within one mile of said Round Mound, within six months after the commencement of the running of the cars to or near said Round Mound, and that at the expiration of one year from the commencement of the running of the cars to said Round Mound neither said railroad company nor any other person or persons for or in behalf of said railroad company shall not have located or constructed a station or depot within four miles of said Round Mound, except the one herein provided for, then the title in fee simple to said real estate shall vest in said grantee, his, her, or their heirs or assigns. But if at the expiration of six months after the commencement of the running of the cars to said Round Mound, or as far south on the line of said road as said Round Mound, said railroad company shall not have located and constructed a good and substantial freight and passenger depot within one mile of said Round Mound, or if within one year after the commencement of the running of the cars to said point, or as far south as the said Round Mound, said railroad company or any other party or parties shall have located and constructed a station or depot other than the one provided for herein upon the line of said railroad within the space of four miles from said Round Mound, then the title to said real estate shall revest to the said Morgan Fickes and Minerva Fickes, their heirs or assigns.

In witness whereof, we have hereunto set our hands and seals the 7th day of June, 1869.

MORGAN FICKES. [SEAL.]<br>MINERVA FICKES. [SEAL.]

[Said deed was duly acknowledged by the grantors and duly certified on said 7th of June 1869, and was duly recorded in the registry of deeds of Linn county, August 10th 1869.]

Upon this agreed statement of facts the court below rendered judgment in favor of the plaintiff below and against the defendant below. Was this judgment correct? This is the only question in the case; but involved in this question are several others which we shall notice as we proceed. We shall decide however only such of these questions as are necessary to be decided in order to dispose of the case.

In the first place then, we shall assume, but without deciding the question, that the deed executed by Fickes and wife *in blank* as to the grantee, was void when so executed, and was still void after Chanute filled up the blank by inserting his own name therein. (*Ayres v. Probasco*, 14 Kas. 176, and cases there cited.)

1. Deed in blank.

The next question, and one of the two main questions in the case is, whether the deed was made valid by any of the subsequent transactions. The other main question is, whether the deed is void as being in contravention of public policy. In discussing the first of these two questions we shall assume that the deed is not void because of any supposed antagonism to public policy. We have heretofore had occasion to examine similar questions in the cases of *Knaggs v. Mastin*, 9 Kas. 532, and *Ayres v. Probasco*, 14 Kas. 177, 196, 197. But those two cases differ from this in essential particulars. In the Knaggs case the deed was held to be good upon the ground of an equitable estoppel and of a subsequent ratification. But in this case we hardly suppose that an equitable estoppel can be interposed to aid the defective execution of the deed; for Chanute was fully aware of its defective execution when he inserted his own name therein as grantee. (See *Ayres v. Probasco*, supra.) The record does not show whether the defendant Tucker was aware of said defective execution or not, but as his counsel do not seem to claim that he stands in any better situation than his grantor (Chanute) did, we have concluded to treat the question now under consideration just as though it had arisen between the original parties to said deed. In the Ayres case the mortgage was held bad because there was no ground upon which an equitable estoppel could be founded, and there was nothing showing a subsequent ratification of the mortgage by Mrs. Ayres, in whom the title was; and as the mortgaged property was a homestead, the mortgage was wholly void without her consent. In the present case there is very much tending to show that Fickes, the grantor, in whom the title was, did by his subsequent acts and words

2. Ratifying void deed. Cases, and authorities.

ratify and confirm the deed after it was filled up, so as to make it a deed to Chanute; and there is no pretense that the property attempted to be conveyed was at any time a homestead. The only question then for us now to consider is, whether the subsequent acts and words of Fickes did ratify, confirm, and make valid said deed. We think they did. Of course the regular way to execute a deed would be to complete the body of the same first, and then to affix the signature of the grantor; but this manner of executing a deed is not absolutely necessary. If the deed is complete when it is delivered, that is all that is necessary. It makes no difference in what order, or when, or where, or by whom the different parts of the deed are drawn up; or whether they are drawn up in the presence or absence of the grantor; or whether they are written or printed, or partly one and partly the other; or whether the grantor makes his signature before or after they are drawn up, or at some intermediate point of time, provided however, that before the deed is delivered it is made complete and perfect, and that the grantor has *actual knowledge* of its contents, and that with such knowledge he authorizes its delivery. Now the present deed comes very nearly within the foregoing description of a good deed. All that it lacks is, that it was not formally delivered by Fickes to Chanute after its final completion by inserting Chanute's name therein, for Chanute already had the possession of the deed. If after Chanute inserted his name in the deed he had handed it to Fickes, and Fickes had returned it to Chanute with the intention that it should be his deed, it would undoubtedly have become a good and valid deed by virtue of such act. (*Speake v. U. S.*, 9 Cranch, 28; *Malarin v. U. S.*, 1 Wallace, 282, 288.) But an actual or formal delivery of a deed never was necessary. A deed may be good by constructive delivery as well as by actual delivery. Any words or acts showing an intention on the part of the grantor that the deed shall be considered as completely executed, and the title conveyed, is sufficient. (4 U. S. Dig., First Series, 481, paragraph 306, et seq., and cases there cited.) And where a deed has been delivered to

the grantee before it is finally completed, and the grantee completes the same, as in this case, we think the grantor may with a full knowledge of all the facts ratify and confirm the deed and make it valid by any words or acts which show a clear intention on his part that the deed shall be considered as having been properly executed and delivered, and as conveying the title to the property. (*Devin v. Himer,* 29 Iowa, 297.) Where a grantor obtained a deed without authority, it was held that the grantor might make the deed and the delivery thereof good by ratification, without any subsequent delivery thereof. (*Parker v. Hill,* 8 Metc. (Mass.) 447, 450.) It has also been held that a void deed already delivered may be ratified by words or acts without a reëxecution or redelivery of the deed. (*Garrett v. Gouter,* 42 Penn. St. 143; *Warden v. Eichbaum,* 3 Grant's Cases, (Penn.) 42; *Jones v. Evans,* 7 Dana, (Ky.) 96, 98.) Also held, that a bond or deed may be materially altered after its delivery, with the consent of all the parties, and still be valid. (*Speake v. U. S.,* supra; *Bassett v. Bassett,* 55 Me. 125, 127.) And other sealed instruments affecting real estate, void when delivered, have been held to be made valid by ratification without a second execution or delivery. (*Breithaupt v. Thurmond,* 2 Rich. (S. C.) 216; *Powell v. Gossom,* 8 B. Mon. 179; *Hall v. Vanness,* 49 Penn. St. 457.) In the present case, Fickes knew that the deed was filled up with the name of Chanute as grantee; he knew that Chanute took possession of the land under the deed, and laid it out into town lots, streets, alleys, etc.; he knew that Chanute claimed the property under the deed, and yet he made no objection to all this, but on the contrary he recognized Chanute's right to the property at various times, and bought two of the lots that went to Chanute under the deed. Fickes sold his remaining half of the property to Cameron, and then told Chanute that Cameron "would be a good man to push the town." And when Fickes executed the quitclaim deed to the plaintiff, Allen, he told Allen that he did not claim any of the land claimed by Chanute except the undivided-half of certain strips not laid

3. Deed held valid.

out into town lots, streets, or alleys, and that he would not claim even this except for a difference between himself and Chanute. Was not this a good and sufficient ratification of the deed, known by Fickes to have been completed, and known by him to have been in Chanute's possession? Does not this show beyond all question, that Fickes intended that the deed should be a good and valid deed conveying the property to Chanute? And if so, was there any necessity to go through with the useless form of Chanute handing the deed to Fickes, and Fickes returning it to Chanute so as to constitute a formal delivery? We think the deed was ratified, and so made valid so far as this question is concerned.

Is the deed void because in contravention of public policy? We think not. It is a deed conveying an estate upon condition, but whether upon condition precedent, or condition sub-

4. Public policy; conditions of deed.
sequent, or partly one and partly the other, it is difficult to determine. As Chanute was to take immediate possession of the property, and survey it into town lots, streets, alleys, etc.; and as the title to the property was to "revest" in Fickes for any conditions broken, it would seem that all the conditions were intended to be conditions subsequent, and not precedent. But there is other language in the deed that would seem to indicate a contrary intention, and that all the conditions were intended to be fulfilled before any estate should vest in Chanute. Probably however the fairest interpretation of the deed would be, that no estate was to vest in Chanute until the land should be surveyed, platted, etc., and the desired depot built, and then that the estate should vest in him subject to be defeated or forfeited upon condition that the prescribed depot should be built within the prescribed time and limit. This would make the surveying and the platting of the town-site, and the building of the desired depot, conditions precedent, and the refraining from building the other depot a condition subsequent. And surely, this last condition should be considered a condition subsequent; for under the terms of the deed it could not possibly have been fulfilled under one year from the time when the cars com-

menced to run to that place, while all the other conditions might have beeen fulfilled before the cars commenced to run at all, and must have been fulfilled within six months thereafter. Now it can hardly be possible that the parties intended that Chanute should lay out said town-site, should know which were his town lots, and be in possession of them, and then hold them six months or a year before any title to them should vest in him. This is not the way people do business in this western country. Probably the parties expected to sell nearly all said town lots before the end of the year. Indeed, Fickes bought two of Chanute's lots within less than a year, and even within less than six months after said deed was executed. (In connection with this subject, see *Southard v. Central Rld. Co.*, 2 Dutch. N. J. 13; *Nicoll v. N. Y. & Erie Rld Co.*, 12 N. Y. 121, 131.) The deed in one place reads as though it was intended that the survey, platting, etc., should "vest in the grantee an indefeasible fee-simple title" to the odd-numbered lots. Now if the condition not to build said depot was a condition subsequent, then under no circumstances could the deed be held void on account thereof, because, first, the condition was fulfilled; second, if it had been broken, Allen could not claim a forfeiture on account thereof, but only Fickes, or his heirs; (2 Washb. Real Prop. 451; 1 Hilliard Real Prop. 430;) and third, if the condition were really illegal, immoral, or against public policy, then the effect would be to leave the estate already vested in Chanute absolute and not conditional; (2 Washb. Real Prop. 447; 1 Hilliard Real Prop. 510.) But for the purposes of the case we shall suppose that all the conditions were conditions precedent; and then, would the deed be void? We think not. We suppose it is not claimed that the agreement to lay out the land into a town-site, was illegal. Neither do we suppose that it is claimed that the agreement to build the depot, was illegal. (*Workman v. Campbell*, 46 Mo. 305.) It is the agreement *that a depot should not be built*, which we suppose the defendant in error claims was illegal. Now a contract that a depot should not be built for

all time, would surely be illegal. (*St. Jo. & D. C. Rld. Co. v. Ryan,* 11 Kas. 602.) A contract that a depot should not be built at or near some particular *town* or *city* for the space of one year, would probably also be illegal. The courts could see from the facts of such a case that such a contract would be against public policy; and they could therefore determine, as a matter of law, from such facts that such a contract would be illegal and void. But how can any court, without knowing the facts, determine as a matter of law that a contract not to build a depot at a particular place (not a town or city) for the space of one year only, would be against public policy, and therefore illegal and void? There are whole counties in this state without any population. There are many places where a depot will probably not be needed for the next century. And is it possible, that a contract, not to build a depot at any one of such places, for the space of one year only, would necessarily, and as a matter of law, be *illegal* and void? It is not enough for the present case that the contract, or rather the condition of the deed, should be merely indifferent or valueless. It must be absolutely *illegal* in order to be available to the plaintiff below. Whether there was any population at or near said "Round Mound," or not, the record does not disclose. Or, whether any depot might ever be needed there, the record does not show. And courts cannot take judicial notice, without any facts being brought to their knowledge, where depots might be needed, and where they would not be needed. When this deed was executed, there was a railroad in prospect, and a town in prospect; and that is about all there is to show that there was any necessity for any depot anywhere within that whole country. But for the purposes of this case we will suppose that the courts can determine as a matter of law, and without reference to the facts, that the condition in the. present deed that no depot should be built at a particular place within one year, was illegal; and upon such supposition, would the deed be void? We still think not. Every condition of the deed was scrupulously fulfilled, within the very terms of the

deed, long before the plaintiff, Allen, claims to have obtained any interest in the property. At the time that Allen procured his quitclaim deed from Fickes, nothing pertaining to the original transactions between Fickes and Chanute, or contemplated in the deed from Fickes to Chanute, remained executory. Everything had previously been executed and fulfilled, and executed and fulfilled without the commission of any illegal, immoral, or injurious act. It is not pretended that the failure to build said proscribed depot injured or produced any inconvenience to any person or society. And Chanute and his grantees have long been in the possession of the property, holding the same under said deed. The question then to be now considered is, not whether an illegal executory contract shall be enforced, but it is whether vested rights held under an illegal executed contract shall be disturbed. Or, to state the question more accurately, it is, whether vested rights, held under a contract partially illegal in its origin, but now wholly executed, and executed without the commission of any wrongful act, can now be disturbed because of such original illegality, by an assignee of one of the parties to the contract, where both parties to the contract were equally in the wrong? The assignee in this case is not an innocent purchaser. He obtained said quitclaim deed knowing all the facts, and of course he can have no greater or better rights than Fickes had. If Fickes could not avoid the deed to Chanute for illegality, then of course Allen cannot. And we do not think that Fickes could. It is a general rule of law that a man will not be allowed to set up his own illegal acts for the purpose of avoiding his own deed. And with regard to executed illegal contracts, where the parties thereto are in equal wrong, it is a general rule that the law will not aid either of them, but will leave each and all of them where it finds them. *In pari delicto potior est conditio defendentis;* and *In pari delicto potior est conditio possidentis.* (2 Pars. Contr. 747, note *w*, and cases therein cited.) This rule of law has been applied to cases very similar to the one at bar. (*Worcester v. Eaton,* 11 Mass. 368, 375, et seq.; *Swain*

*v. Russell*, 10 Ind. 438.) And we think it ought to be applied to this case. If the contract not to build said depot was illegal, then clearly Fickes was *in pari delicto* with Chanute; and he would not be allowed to set up his own wrong for the purpose of defeating his own deed. And this is especially so where he has received the full consideration for his contract, and where it has probably proved immensely valuable to him, and where he has not offered to return any portion of the same.

It is also claimed that the description of the land in the deed was indefinite and uncertain. Now the description was such that it could easily be made certain by a fulfillment of the terms and conditions of the deed itself. And the description was made certain, exactly in accordance with the deed, and to the full satisfaction of all the parties interested. The land was surveyed. It was laid out into lots, streets, alleys, etc. The lots were numbered. And a plat thereof was made, and filed in the office of the register of deeds September 2d 1869, according to law. (Gen. Stat. 618.) And by these transactions the description of the property conveyed was made as absolutely certain as it could be. And the whole description of the property now rests in record evidence. We think such a description is good. In connection with this question we would refer to *Armstrong v. Mudd*, 10 B. Mon. 144; *Grover v. Drummond*, 25 Me. 185.

5. Description of land; certainty.

The judgment of the court below will be reversed, and cause remanded with the order that judgment be rendered on the agreed statement of facts in favor of the defendant below, and against the plaintiff below.

All the Justices concurring.