JOSEPH McNULTY *et al.* v. JOHN W. McNULTY.

DEED—*Ratification of Invalid Delivery.* Where the grantee has surreptitiously obtained possession of a deed duly acknowledged, but never lawfully delivered, such possession and invalid delivery may be ratified by the subsequent acts of the grantor, which show a clear recognition and acquiesence in the grantee's title to the land conveyed by such deed. *Held,* That the evidence and special findings of fact in this case show that the grantor ratified the act of the grantee in taking into his possession the deed of June 30, 1876; and that the conclusion of law, as found by the district court, that the grantor did not ratify such possession, is not warranted by the evidence and the special findings of fact.

*Error from Osage District Court.*

THE facts are substantially stated in the opinion.

*A. Smith Devenney,* for plaintiff in error.

*Isaac Farley,* and *Robt. C. Heizer,* for defendant in error.

Opinion by GREEN, C.: Christopher McNulty, a bachelor, owned the west half of the northwest quarter of section 25, in township 18, in range 16, in Osage county. On the 6th day of September, 1872, he conveyed this land to his brother, John W. McNulty, for the sum of $500, and the grantee was placed in possession of the premises, and exercised acts of ownership over the same. It seems there were three brothers then living—John W., the defendant in error in this case, Christopher, the grantor in the deed named, and Joseph, one of the plaintiffs in error. On the 30th day of June, 1876, John W. McNulty and wife made a deed to the land in controversy to Christopher McNulty for the sum of $500, which sum, it was claimed, was never paid. The grantor placed the deed in a bureau drawer in his own home, among his private papers, from which place it was taken several years afterward by the grantee, and on the 22d day of August, 1884, by him placed upon record without the knowledge or consent of the grantor. This action was brought on the 15th day of Decem-

ber, 1887, by John W. McNulty, to set aside this deed, executed by him and his wife to Christopher McNulty, (which he insists was never delivered,) and a deed subsequently executed by Christopher to his brother Joseph, conveying the same land.   The case was submitted to the court at the November term, 1888, and the following special findings of fact and conclusions of law were made:

## "SPECIAL FINDINGS.

"1. This action was instituted by John W. McNulty, plaintiff herein, against the said defendants herein, Joseph McNulty and wife, on the 15th day of December, 1887, in said court.

"2. Said plaintiff and said defendant Joseph McNulty are brothers; the former being a resident, with his family, of Osage county, Kansas, and the latter being a resident of Johnson county, Kansas, and is the head of a family.

"3. One Christopher, or 'Chris.' McNulty died in Johnson county, Kansas, on June 6, 1887, of consumption, at the residence of the said Joseph McNulty, who, as well as the plaintiff, was a brother of said decedent.   The said deceased never having been married, he made his home from the year 1871 to date of his death, alternately, with his said brothers, John W. and Joseph, except when he was absent in California.

"4. Prior to September 6, 1872, said Chris. McNulty was the owner in fee of the west half ($\frac{1}{2}$) of the northeast quarter ($\frac{1}{4}$) of section 25, township 18, range 16, in Osage county, Kansas, and on that day he executed and delivered to plaintiff, John W. McNulty, a warranty deed for said land, which deed was duly recorded on the 20th of September, 1872.   Said deed contained a recital of a consideration of $500, and other than said recital there is no evidence of any consideration passing from said John W. McNulty to said Chris. McNulty for said land.

"5. In 1872, and for several years prior to that year, the said Chris. McNulty was engaged in business at Olathe, Kas., in company with one Charles Wagoner, and at the time said conveyance was made by said Chris. McNulty to said John W. McNulty the creditors of said firm of McNulty & Wagoner were pressing them for the payment of their debts, and said conveyance was made by said Chris. McNulty for the

14 ·— 47 KAS.

purpose of putting said land beyond the reach of the creditors of said firm.

"6. Immediately after the execution of said deed to him, said John W. McNulty took possession of said land, and continued in the possession thereof, and in the full enjoyment of all rents and profits thereof, up to and including the year 1884, and paid the taxes thereon from 1873 up to 1883, both years inclusive, and the first half of the taxes of 1884.

"7. On the 30th day of June, 1876, said John W. McNulty, his wife joining with him, in the presence of said Chris. McNulty, executed a warranty deed reciting a consideration of $500, conveying said land to said Chris. McNulty, which deed the said John W. McNulty, after the same was executed, retained in his own possession, and said deed was never, at any time, delivered by said John W. McNulty, or by any one for him or by his authority, to any one acting for him, and the said John W. McNulty never intended to deliver said deed to the said Chris. McNulty until the latter should pay to the former the consideration named in said deed.

"8. In the fall of 1883 said Chris. McNulty, who had been for several years in California, returned to Kansas, and spent the remainder of that year and a portion of 1884 at said John W. McNulty's, and while living there, without the knowledge or consent of said John W. McNulty, he took said deed from among the private papers of the said John W. McNulty, and without any authority from him, on the 22d day of August, 1884, filed it for record in the office of the register of deeds of Osage county, state of Kansas, and said John W. McNulty had no knowledge that said deed had come into the possession of said Chris. McNulty until several weeks after it was recorded, and then only by learning that it had been recorded.

"9. Chris. McNulty himself, with the full knowledge of the said John W. McNulty, and without objection on his part, rented said land for the year 1885 to John W. McNulty, a son of said John W., who was living with his father, and took in payment of the rent a note from said John McNulty for $140; and afterward, upon leaving for California, he left said note with the said John W. McNulty, as his agent, to collect the same, and said John W. McNulty did collect said note, and out of the proceeds thereof paid the taxes on said land for the last half of 1884, and the first half of 1885, in the name of said Chris. McNulty, and sent the balance to said Chris. McNulty to California.

"10. In the year 1885, the said Chris. McNulty put the agency of said lands for the leasing thereof and collecting of rent for the year 1885 in the hands of one Peter Chevalier, with the knowledge and consent of said John W. McNulty; but no rents were collected for that year by the said Chris. McNulty or his agent, the tenant to whom said Chevalier rented said land having appropriated the crops and paid no rent to any person.

"11. In the year 1887, the said John W. McNulty rented said land as his own to his son Chris. for one-third of the crop, and that part of the rent share of the crops raised by said defendant was by him delivered to his father, and a part of said rent share was delivered by said tenant, with the knowledge of said John W. McNulty, to defendant Joseph McNulty.

"12. In the spring of 1887, said Chris. McNulty returned from California, and on the 25th day of March, 1887, he executed and delivered to said Joseph McNulty a warranty deed for said land, in which there is recited a consideration of $800, which deed was duly recorded on the 29th day of March, 1887. The consideration was paid by said Joseph McNulty for said land, and at the time said deed was delivered to him by said Chris. McNulty he knew that said John W. McNulty had never delivered said deed of June 30, 1876, unto said Chris. McNulty, and also knew how the latter had obtained possession of said deed. Said Joseph McNulty paid the last half of the taxes of 1885 on said land, and also the taxes for 1886 and 1887.

"13. When said Chris. McNulty returned from California in the spring of 1887, he held a note for $1,000, dated April 29, 1884, executed to him by said John W. McNulty; and some time after his return, and a short time before his death, John W. McNulty visited him at the residence of said Joseph McNulty, and while there the said Chris. McNulty surrendered and gave up the said note to said John W. McNulty.

"14. At a period between the date of the deed from John W. McNulty and wife to Chris. McNulty for the lands in controversy and the date of acquiring possession of said deed by Chris. McNulty, the said John W. McNulty gave a mortgage upon said lands and tenements for the sum of $400, which said mortgage has not been paid, nor has any portion thereof been paid; and that said mortgage was so given without the consent or knowledge of said Chris. McNulty at the time it was given."

"CONCLUSIONS OF LAW.

"1. By the deed of September 5, 1872, so far as the parties to this case are concerned, John W. McNulty, the plaintiff, acquired a perfect legal title to the lands in controversy in this action.

"2. Said John W. McNulty was not divested of the title so acquired by the deed of June 30, 1876, nor by the record of said deed.

"3. Said John W. McNulty did not ratify the act of said Chris. McNulty in taking into his possession and causing to be recorded the deed of June 30, 1876.

"4. The deed of June 30, 1876, from John W. McNulty to Chris. McNulty, and the deed of March 28, 1887, from Chris. McNulty to Joseph McNulty, the defendant, are null and void, and the plaintiff is entitled to have them so declared by decree in this action.

"5. The plaintiff is entitled to recover his costs in this action."

The vital question presented in this case is whether the defendant in error ratified the act of his brother Christopher McNulty in surreptitiously taking the deed, executed on the 30th day of June, 1876, from the bureau drawer where the grantor had placed it, and delivering the same to the register of deeds of Osage county for record, on the 22d day of August, 1884. It is evident from the testimony and the findings of the trial court that there was no delivery of the deed by the grantor. The delivery of a deed, being an essential requisite to effectually pass the title to real estate, the title to the land in controversy must have continued in the defendant in error, unless there was a subsequent ratification by him of the act of his brother in taking the deed without his knowledge. While a deed thus obtained is void, and possesses no greater validity than it would have if forged, still it may be ratified by the grantor after he has full knowledge of all the facts, by any words and acts of his which show a clear intention on his part that the deed should be regarded as properly delivered, and that the same conveyed the title to the property. (*Tucker v. Allen*, 16 Kas. 312.) The district court found as a conclusion of law that John W. McNulty did not ratify that act of his

brother in taking into his possession and causing to be recorded the deed of June 30, 1876. The correctness of this conclusion of law is challenged by the plaintiffs in error, who contend that it is not warranted by the evidence and the special findings of fact. We have carefully examined the facts bearing upon the question of ratification by the plaintiff below. It must be remembered that the transaction was between brothers, and there were some irreconcilable statements made by each one of them, but the following undisputed facts may be gathered from all of the evidence: The plaintiff below learned in a few weeks after his brother Christopher took the deed that it had been placed upon record; the matter was afterward talked over between him and his brother Joseph, and it was known by each how the deed was obtained. The next year after the deed had been obtained the land was rented to a son of the plaintiff below, and a note for $140 for the rent given, payable to the grantee, Christopher McNulty; and this note was delivered to the grantor for collection and was by him collected, and a portion of the amount was used in paying the taxes, in the name of the grantee, and the balance was remitted to him in California by his brother. In the year 1886 the land was rented, with the knowledge of the grantor, to a German, by an agent of the grantee. The plaintiff below acknowledged that his brother Christopher took the agency of this land from him and rented it to some one else for this year. One witness, who appears not to be related to the parties, testified that he rented the farm in 1887, for the year 1888; that he saw that some one had taken possession of the place in the early part of March of the latter year; that he went around and saw John W. McNulty, who informed him that his son was going to farm the place, and when informed that he had rented the place from Joseph McNulty, John W. McNulty replied that he had permission from his brother Christopher the year previous to rent the place, and had rented it to his son for one year, with permission to have it as long as he wanted it, and if he did not get written notice from Joseph he was going to hold over. Subsequently John W.

McNulty stated to him that his son Christopher was going to hold the place; that Christopher's third was as good as that of the witness to Joseph; that if a notice had been given he would have given it up.   It appears that John W. visited his brother Christopher in 1887, a short time before his death, and was presented with a note of $1,000, and was informed by Joseph that Christopher had deeded him the land in controversy; and to this John W. made no objection.   The plaintiff in error paid the last half of the taxes for 1885 and the taxes for 1886 and 1887.

Upon this evidence, the district court made the special findings of fact, *supra*.   As a conclusion of law the court found, that John W. McNulty did not ratify the act of his brother in taking into his possession and causing to be recorded the deed of June 30, 1876.   In this we think the court erred.   There was, in our judgment, such a state of facts as showed a ratification.   The court found that Christopher McNulty, with the knowledge of his brother John W., and without objection upon his part, rented the land in controversy for the year 1885, and took a note for $140, which he left with his brother, who afterward collected the note and accounted to his brother for the proceeds.   The evidence upon which this finding is based indicates, to our minds, that there was a recognition upon the part of John W. McNulty of his brother's right to the land.   He received the rents for his brother, and thus recognized his title, which could only come through the delivery of the deed of June 30, 1876. Having once acknowledged and recognized the title of his brother, we do not think he could afterward be heard to say that his conduct and statements were the result of a doubt in his mind as to his legal rights.   The grantor cannot recognize the possession of a deed as valid for some purposes, and then disclaim it as being nugatory for all others. (*Cotton v. Gregory*, 10 Neb. 125.)   John W. knew that his brother had obtained possession of the deed and placed it upon record, and for three years thereafter he recognized his brother's title to the land. It has become an axiomatic rule of law, which requires no

*Deed—ratification of invalid delivery.*

argumentative demonstration or authority to support it, that that to which a person assents is not esteemed in law an injury. We think it clear from the evidence that there was no delivery of the deed of June 30, 1876, in the first instance, but we base our decision upon the fundamental truth that a delivery may be made good by a subsequent assent, though originally invalid for the want of it, upon the well-settled principle that a subsequent ratification may have a retrospective effect. (3 Washb. Real Prop. 305; *Holbrook v. Chamberlin*, 116 Mass. 155.) While it is true that where possession has been obtained surreptitiously of a deed which has never been delivered, it requires an express ratification, or at least an acquiescence, after knowledge of all the facts, of such a character as would create a presumption of an express ratification, to give force and effect to the deed; (1 Devl. Deeds, § 268;) still we are of the opinion that the evidence before the district court indicated such a ratification and acquiescence upon the part of the plaintiff below as to bind him, and to show that he recognized his brother's title after he had full knowledge of all the facts.

We think the second and third conclusions of law were not authorized by the evidence, or supported by the special findings of fact, and therefore recommend a reversal of the judgment, and that a new trial be granted.

By the Court: It is so ordered.

All the Justices concurring.