CHARLES WUESTER AND T. J. MADDEN v. MAGGIE FOLIN.

No. 11133.

1. CONVEYANCE—*Delivery of Deed.* Before a deed can operate as a valid transfer of title there must be a delivery of the instrument which becomes effective during the life of the grantor.

2. ———— *Actual Delivery in Person is not Essential.* It is not essential that the grantor deliver the instrument to the grantee in person. An unconditional delivery to a third person for the use and benefit of the grantee, where the grantor intends to divest himself of the title and to part with all control over the instrument, is ordinarily a sufficient delivery, although there was no formal acceptance of the deed by the grantee until after the death of the grantor.

3. ———— *Acceptance Presumed.* A formal acceptance by the grantee is not required. Where the grant is clearly beneficial to the grantee his acceptance of it is to be presumed, in the absence of proof to the contrary, and this presumption is not overcome by anything short of the actual dissent of the grantee.

4. ———— *Rights of an Alien Woman.* An alien woman who in good faith has become a resident of the United States may, under chapter 3, Laws of 1891 (Gen. Stat. 1897, ch. 51), take a defeasible title in land and hold the same for a period of six years, and if during that time she complies with the provisions of the statute she may acquire an indefeasible title in it as against an attack by the state or any other party.

Error from Marshall district court; R. B. SPILMAN, judge. Opinion filed March 11, 1899. Affirmed.

*M. W. Terry*, *T. J. Madden*, and *Waggener, Horton & Orr*, for plaintiffs in error.

*W. W. Redmond, Cal. T. Mann*, and *E. A. Berry*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action to quiet the title to a tract of land which was claimed by Maggie Folin, plaintiff below, under a deed executed by Mark Madden on October 14, 1895, purporting to convey the land to her, and claimed by the defendant T. J. Madden under a will made two days later, in which the land was bequeathed to him by Mark Madden. Charles Wuester claimed under a lease of the land made by Mark Madden in his lifetime. The trial court, after hearing a great deal of testimony as to the execution and delivery of the deed, and as to the right of Maggie Folin to take and hold the land, found generally in her favor, and gave judgment accordingly.

One of the principal points of contention at the trial was whether there was a valid and effectual delivery of the deed to Maggie Folin, and, although the delivery was upheld by the findings of the trial court, its sufficiency is again challenged on this review. It appears that Mark Madden was the owner of 200 acres of land and some other property in Marshall county. On October 14, 1895, he asked his pastor, Father Hurley, to request H. K. Sharpe, an attorney living in the county, to call upon him. When Sharpe called he was informed by Madden that he desired to convey 100 acres of land to his niece, Maggie Folin, who at that time he thought lived in Louisville, Ky., and the remaining 100 acres he desired to convey to his nephew, James O'Toole. Sharpe prepared the deeds in accord-

ance with his directions, and he executed both of them in the presence of witnesses. He indicated a desire to have the conveyances take effect at once, and directed Sharpe, in whose hands the deeds were left, to have them recorded at once. The deeds were filed for record on October 17, 1895, and Sharpe undertook to notify the grantees of the conveyances that had been made. On October 16, 1895, the will mentioned was made by Mark Madden, in which the deeds were referred to as wills, and it contained a provision devising all of the land to his nephew, T. J. Madden. On October 27, 1895, Mark Madden died without having made any other or further disposition of his property.

It appears that when the conveyance was made to Maggie Folin, Mark Madden had never seen her, and although he thought she was in this country she was in fact in Ireland, and remained there for several months afterward. She was a native of Ireland who came to this country in 1891 and remained here until May, 1895, when, learning that her mother was sick, she returned to Ireland to take care of her. After her mother died, in September, 1895, she left Ireland and returned to this country. While she was in correspondence with her uncle, Mark Madden, she never met him, and never learned of the conveyance of the land to her until some time after his death. Sharpe notified her of the conveyance and exercised control over the land until she arrived and took actual possession of the same. It thus appears that the deed in question was executed and placed in the hands of Sharpe before the will was made, and if it was completed as to delivery and acceptance it would seem to be sufficient to convey title. It is in due form, and there is no claim of undue influence being exercised upon the grantor to obtain the conveyance, or that he

Wuester v. Folin.

was in any way incapacitated to make it. The testi-
mony tends to show that at the time of the convey-
ance he desired and intended to vest title in his niece,
and it would seem that he accomplished his purpose
unless there was in fact no delivery or the grantee was
incapable of taking the title.

Much stress is placed on the fact that the deed was
not placed in the hands of Maggie Folin until after
the death of Madden, and also that she had no knowl-
edge of the gift or conveyance during his lifetime.
It is argued that the acceptance by the grantee is es-
sential to a complete delivery, that there was no actual
acceptance by her, and that unless the conveyance
was complete in the lifetime of the grantor no title
could pass to her. Before a deed can operate as a
valid transfer of title there must be a delivery of the
instrument, and it must be effected during the life of
the grantor. It is not essential, however, for the
grantor to deliver the instrument to the grantee in
person. An unconditional delivery to a third person
for the use and benefit of the grantee, where the
grantor intends to divest the title and to part with all
control over the instrument, is ordinarily a sufficient
delivery. What constitutes a sufficient delivery is
largely a matter of intention, and the usual test is,
Did the grantor by his acts or words, or both, manifest
an intention to make the instrument his deed, and
thereby divest himself of title? When the deed has
passed beyond the control of the grantor, and he has
placed it in the hands of a third person with a declared
or manifest purpose to make a present transfer of the
title, a formal acceptance by the grantee is not re-
quired. Where the grant is clearly beneficial to the
grantee, his acceptance of it is to be presumed in the
absence of proof to the contrary, and it has been held

that this presumption is not overcome by anything short of the actual dissent of the grantee. (*Lessee of Mitchell v. Ryan*, 3 Ohio St. 386; 1 Devlin, Deeds, 287; 9 A. & E. Encycl. of L., 2d ed., 162, and cases cited.)

The general finding of the court requires us to indulge every inference favorable to the grantee which may be drawn from the testimony. In the light of that finding, it must be held that when the deed was placed in Sharpe's hands it was done with the intention that it take effect at once, and that the grantor then parted with all dominion and control over it. Sharpe only acted as a scrivener and custodian, and was not the agent of the grantor in the sense that his possession of the deed was the grantor's possession. In addition to the expressed purpose of placing the title to the land in his niece, the grantor directed Sharpe to place the deed on record. Although not of itself a delivery, it strongly tends to show the purpose of the grantor not only to surrender control and dominion of the deed, but also to make a present and complete transfer of title to the grantee. As the case stands, we have a deed of gift clearly beneficial to the grantee placed by the grantor in the hands of a stranger for the benefit of the grantee, the grantor having parted with all control over the deed, and who by his words and acts when the deed was delivered to the stranger clearly indicated a purpose to transfer the title to the grantee at once; and when the grantee subsequently learned of the conveyance she accepted the deed and claims under it. In such a case the delivery is deemed to be complete and the acceptance to take effect from the original delivery to the third person for the use of the grantee.

It is next contended that the deed was inoperative

and void because Maggie Folin was incapable of acquiring title to any real estate in Kansas by purchase or otherwise. It is contended that she was an alien in every sense, a non-resident of the state and of the United States, and that by virtue of the provisions of chapter 3, Laws of 1891 (Gen. Stat. 1897, ch. 51), she is precluded from taking by purchase, gift or otherwise any of the land owned by Mark Madden in his lifetime. It is conceded that Maggie Folin was of foreign birth and not naturalized when the deed was executed, but under the testimony and the finding of the court it must be held that she has been a resident of the United States since 1891, with the fixed purpose of making this country her permanent home. She is therefore to be regarded as a resident alien, and it appears that she has undertaken to comply with the statutes in regard to the taking and holding of property by resident aliens.

It will be observed that section 17 of the bill of rights, as amended in 1888, does not prohibit the taking or holding of lands by aliens, but only provides that their rights in that respect be regulated by law. The act of 1891 undertakes to regulate the rights of aliens in reference to the purchase, enjoyment or descent of real property in Kansas. An examination of the entire provisions of the act makes it clear that the phrase "non-resident-alien" used therein has reference to aliens residing beyond the limits of the United States. Sections 3 and 4 of the act provide that resident aliens may take and hold lands in Kansas for at least a period of six years, provided that they, during that time, conform to the requirements of the act. An alien resident may, by declaring his intention to become a citizen of the United States according to the naturalization laws, take and hold lands for a period

of six years, and an alien female who in good faith
has become an actual resident of the United States
may take and hold land for a period of six years, and
may sell, assign, mortgage or dispose of the same in
any manner in which she might do if she were a
natural-born citizen of the United States.    In case of
a male person, it is provided that at the time of acquir-
ing the lands he shall cause a certified copy of his in-
tention to become a citizen of the United States to be
filed in the office of the register of deeds, and in case
of a female her affidavit that she is in good faith an
actual resident of the United States shall be so filed.
It is provided that if these provisions be not complied
with within six years by the alien holders of real es-
tate it shall revert to, escheat and become the prop-
erty of the state of Kansas, and provision is made for
the manner in which the forfeiture may be accom-
plished.

In our view the law contemplates that alien resi-
dents may take a defeasible title in lands and hold the
same for a period of six years, and if compliance be
made with the requirements mentioned they will ac-
quire an indefeasible title which will be good even
against the state of Kansas.    Many of the courts hold
under similar statutes that the title acquired by an
alien cannot be questioned by any one except the
state, and can be divested only by a proceeding
brought in behalf of the state for that purpose.    This
question, however, we need not decide at this time,
as it appears that Maggie Folin has made the required
affidavit within the prescribed time, and therefore,
under sections 3 and 4 of the act, has perfected her
title and made it good as against an attack by the
state or any other party.    On October 15, 1896, she
made and filed an affidavit stating that she was in

good faith an actual resident of the United States, and
had been such resident for more than five years last
past, and that during the year 1895 she went to Ire-
land and was temporarily absent on account of the
sickness of her mother, who resided in Ireland, but
that she was at that time a *bona fide* resident of Mar-
shall county, Kansas, and lived on the land in ques-
tion.  The filing of the affidavit under the statute is a
condition subsequent, the performance of which gives
her an indefeasible title, and the affidavit referred to
appears to meet the requirements of the law.  We
therefore feel bound to hold that the defendant in er-
ror has acquired a good title to the land and was en-
titled to have the same quieted against both of the
plaintiffs in error.

The judgment of the district court will be affirmed.