BRIDGET NOLAN *et al.* V. JOSEPH OTNEY *et al.*

No. 14,896   (89 Pac. 690.)

SYLLABUS BY THE COURT.

1. CONVEYANCES—*Deed Delivered to a Custodian—Enjoyment Postponed until after Grantor's Death.* Where an instrument, executed and placed in the hands of a third person to be delivered to the grantee on the death of the grantor, being otherwise in the form of an ordinary warranty deed, provides that it shall not take effect until the death of the grantor, such provision will, in the absence of some controlling reason to the contrary, be construed to mean that the title is to vest at once, only the enjoyment being postponed until the death of the grantor.

2. ——— *Grantee to Care for Grantor During Latter's Lifetime.* The recital in such a deed that it is understood that the grantee is to care for the grantor during the remainder of his life is not inconsistent with such an interpretation.

3. ——— *Control Relinquished by Grantor—Custodian Directed to Hold Instrument until Grantee Performs Conditions.* Where the owner of land executes an instrument in the form of a deed, and places it beyond recall in the hands of a third person to be delivered at his death, the delivery thereof, if otherwise sufficient, will ·not be held ineffectual at the instance of the heirs of the grantor merely because the instructions given to the custodian included a direction to hold the instrument until the grantee had performed certain conditions, all of which were capable of performance within the lifetime of the grantor.

Error from Washington district court; WILLIAM T. DILLON, judge. Opinion filed March 9, 1907. Affirmed.

*George W. Day, Charles Smith,* and *Frederick J. Chase,* for plaintiffs in error.

*E. A. Berry, J. W. Rector,* and *Gregg & Gregg,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: Martin Dolan executed an instrument purporting to be a warranty deed conveying property to Joseph Otney, but containing these words immedi-

ately following the granting clause, which was in the usual form:

"This deed is made with the understanding that the same is not to take effect or be in force until the death of the grantor, and upon the death of the grantor is to take effect and at said time to vest in the said grantee the absolute title in fee simple of the property above described.

"And it is further understood that the said Joseph Otney is to take care of and maintain the said M. Dolan, a single man, during the balance of his natural life."

The instrument was placed in the hands of a third person, to be delivered after the grantor's death to the grantee. Dolan died and the delivery was made. The heirs brought a suit against Otney to have the deed·set aside. The court sustained a demurrer to their evidence, and they prosecute error.

Some months before his death Dolan handed the deed to one John Grimes, with directions after his death to give it to Otney. On the same occasion, however, Dolan said to Grimes: "Of course, if I ask you for the deed you would give it to me." Grimes answered that he certainly would, and Dolan responded: "Martin will never ask for it." The day before he died, however, he gave Grimes instructions in the presence of Otney to deliver the deed after his death, provided Otney should haul some corn, pay a sum of money, and give a note for $100. These conditions were fully complied with, and, after the death of Dolan, Grimes handed the deed to Otney.

The question which has been discussed by counsel is whether the language of the deed, in connection with the circumstances attending its delivery, shows the grantor to have intended that no title should pass until his death, in which case it would be testamentary in its character and therefore inoperative. The plaintiffs in error rely largely upon the first paragraph above quoted as having this effect, arguing that such explicit language admits of no other construction. If we as-

sume that the words employed were used with technical exactness it would be difficult or impossible to escape from this conclusion.   Nevertheless we are persuaded that what the grantor intended was no more than that the possession and enjoyment of the property by the grantee should be postponed until his death.   This view can be justified under the authorities by reason of the place in the deed in which the provision occurs.   As it follows the granting clause it must be deemed not to overthrow it.   (*Durand v. Higgins,* 67 Kan. 110, 72 Pac. 567.)   We are not disposed, however, to attach controlling importance to this consideration.   The real intent of the grantor being the object of our search, the inquiry is, not what do his words mean in strict legal contemplation, but in what sense did he use them —what idea did he employ them to convey.   The decisions are not in harmony on the subject, but a well-defined tendency clearly appears in the more recent cases to uphold the deed if possible, and if necessary to that end to regard it as speaking with colloquial freedom rather than with formal accuracy.

"In deeds the first clause prevails generally over the later, and surely a later clause of mere further assurance would not emasculate and predominate over the prior granting clause, but just the reverse.   As to wills the rule has ever been that, regardless of form or orderly parts, we must look at the real intention; but this has not been the case in the construction of deeds. Deeds have orderly parts, technical words of precise legal signification, and in times gone by those parts and words, and the strict rule of construction of them, have been rigorously observed, often defeating the manifest intention.   Modern construction, however, has leaned towards the intention, overriding mere form and technical words, and nowadays it may be said that the intention must rule the construction in deeds as well as in wills."   (*Uhl v. Railroad Co.,* 51 W. Va. 106, 114, 41 S. E. 340.)

"There is a tendency, however, in the modern decisions to uphold conveyances when not clearly repugnant to some well-defined rule of law."   (*Love v. Blauw,*

61 Kan. 496, 501, 59 Pac. 1059, 48 L. R. A. 257, 78 Am.
St. Rep. 334.)

"The original tendency was toward holding that pa-
pers indicating an intention to postpone enjoyment by
the persons claiming to be grantees till after the death
of the persons executing the papers should be classed
as wills. This tendency in time yielded to another,
namely, that it was the sounder policy in a case of
doubt to declare that the instrument was a deed and
thus make it effectual, when holding it to be testa-
mentary would, for want of the requisite number of
witnesses, render it nugatory. The true test, of course,
is the intention of the maker, which is to be gathered
from the terms of the paper. . . . Why should
even the most ignorant man adopt the form of a deed
if he intended to make a will? Almost any person,
however illiterate or uninformed, would, if he desired
to execute a real will, adopt for expressing his purpose
language altogether unsuited for a present conveyance.
Where the form of a deed is actually employed, such
phrases as, 'after my death,' 'vest at my death,' 'take
effect at my death,' and the like, may well be construed
as merely designed to postpone possession or enjoy-
ment by the grantee till after the death of the grantor."
(*West v. Wright,* 115 Ga. 277, 41 S. E. 602.)

The syllabus of the case last cited reads:

"An instrument attested as a deed, and in all re-
spects in the form of a deed, should, though it contains
the words 'this deed to take effect at my death,' be
treated, not as a will, but as a conveyance passing title
*in præsenti,* with right of possession postponed till the
death of the maker."

The late case of *Hunt v. Hunt* (Ky.), 82 S. W.
998, 68 L. R. A. 180, after reviewing the authorities in
some detail, concludes:

"The object of all construction is to arrive at the in-
tention of the maker of the instrument. In doing this
all parts of the instrument must be considered, and in
a deed, in case of doubt, it must be resolved against the
grantor, for he selects his own language. While the
instrument in question contains the words that it is not
to take effect until the death of the grantors, it also
contains the words 'do hereby sell and convey,' 'to have
and to hold,' and 'said party of the first part hereby

covenants with the said party of the second part that he will warrant the title hereby conveyed.' These words aptly convey a present estate, and it is not presumed that one part of the deed was intended to conflict with another. As it is clear that, as to S. E. Hunt, only the enjoyment of the property was postponed until her death, we conclude that, giving some effect to all parts of the deed, its proper construction is that the grantee takes a present estate vesting at the time of its delivery, but taking effect in possession at the death of the father and mother." (68 L. R. A. 182.)

The syllabus as printed in the Lawyers' Reports Annotated reads:

"A present estate vesting at the time of delivery of the deed, but taking effect in possession at the death of the father and mother, is conveyed by a grant by the owner of land and his wife to their child in an instrument authenticated as a deed and containing words of present grant and covenants of warranty, although it provides that 'this deed is not to take effect until the death of' the grantors."

Applying the reasoning of these cases to the facts here presented, we are convinced that the real purpose of Dolan, so far as disclosed by the language of the deed now under consideration, notwithstanding his failure to express it in correct terms, was to vest a title immediately in Otney, reserving only a life-interest in himself; that is to say, the deed should be taken to mean this in the same sense and for the same reasons that such meaning is imputed in the case of the deposit of an ordinary deed under the same circumstances—the words relied upon to change the usual rule do not have that effect. (See as to the general rule *Young v. McWilliams, ante,* p. 243.)

A further question arises with respect to the paragraph of the deed relating to the obligation of the grantee to care for and maintain the grantor during the remainder of his life. A very similar provision was held, in *Culy v. Upham,* 135 Mich. 131, 97 N. W. 405, 106 Am. St. Rep. 388, to make the instrument testa-

mentary in character, and therefore invalid. The exact. language there interpreted was as follows:

"It is expressly understood that my said daughter, Hannah M. Upham, shall live with me and care for me, that the expense thereof shall be derived from the use and income arising from said described lands, and also from any personal property I may have, and that she is to remain with me and care for me until my death, after which event this deed shall be delivered to her, and her title to said lands shall become absolute upon the payment of the several amounts above stated." (Page 132.)

This was regarded as making the delivery depend upon the performance by the grantee of a condition precedent—the maintaining of the grantor so long as he should live. In response to the claim that the condition was waived by the giving of unqualified oral instructions to the depositary to deliver upon the grantor's death, the court answered that this "was merely an attempted verbal modification of the written conditions of the deed, and therefore, under the statute of frauds, entirely ineffectual." (Page 134.) Upon this interpretation the court concluded:

"It is quite apparent that the grantor in this deed intended that title should remain in him until after he died, and that it should then pass to defendant, if she had performed the conditions." (Page 134.)

In the present case, although a part of the consideration of the deed was that the grantee should care for the grantor, the delivery to him was nowhere made to depend upon his doing so. The argument of the Michigan case has therefore no application to the provision referred to, and no reason appears for regarding such provision as fatal to the validity of the deed.

Nevertheless the effect of imposing a condition upon the delivery by the custodian is here involved, for the last instructions given to Grimes included a direction to hold the deed until Otney should perform certain acts, including the giving of a note. Probably the question whether there was a valid delivery must be de-

termined by what took place at that time, for during the first conversation on the subject the understanding seemed to be that Dolan had not relinquished control, and such understanding was inconsistent with an effectual present delivery. (*Cole v. Cole* [Mich.], 108 N. W. 101.)

In *Taft v. Taft*, 59 Mich. 185, 26 N. W. 426, 60 Am. Rep. 291, after an elaborate review of the authorities, the conclusion was reached that no valid delivery can be accomplished by the deposit of a deed with a custodian who is directed to hold it not only until the grantor dies but until the grantee does something on his part, and then deliver it—at least that such is the rule unless the required act is one intended to be performed, or at all events capable of performance, while the grantor is yet alive. Otney did all the acts necessary to entitle him to the deed. Whether or not he in fact performed them before Dolan died, he might have done so, and his doing so may have been within the contemplation of the parties. But we do not care to rely upon this distinction. The view that no effect can be given a deed placed by the grantor in the hands of a third person to be delivered upon his death, if the performance of some act by the grantee is made a condition of such delivery, is supported only by artificial reasoning. It proceeds upon substantially this argument: A deed entrusted to a stranger for delivery at the grantor's death can be upheld only upon the theory that it is not an escrow, but that the title passes when such deposit is made; and where the delivery to the grantee is made to depend upon some act of his, the instrument is an escrow, and conveys no title until finally delivered, or at any rate until such act is performed. But while it is true that ordinarily title is not changed by an escrow until it is rightfully delivered—or until conditions have arisen such that it of right ought to be delivered—to the grantee, it is often held that such delivery when made will be deemed to operate by relation as of the time the deposit was made. This is uniformly done when, as

in *Davis v. Clark,* 58 Kan. 100, 48 Pac. 563, the death of the grantor makes an effective delivery thereafter theoretically impossible. (16 Cyc. 588; 11 A. & E. Encycl. of L. 346.) The fiction of an earlier delivery by relation is adopted in such cases to prevent a manifest hardship and wrong. No reason is apparent why it may not be invoked in such a case as the present to effectuate the lawful intentions of the parties. The very conception that a deed deposited with a stranger to be delivered at the grantor's death operates as a present conveyance is a fiction of like character adopted for a like purpose. (16 Cyc. 566.) In *Craddock v. Barnes,* 142 N. C. 89, 54 S. E. 1003, it was said:

"Some courts hold that an escrow does not take effect as a fully executed deed until there has been a rightful delivery to the grantee; but the logical position approved in a number of authorities is that it is effective as a deed when the grantor relinquishes the possession and control of it by delivery to the depositary, and it passes the title to the grantee when the condition is fully performed, without the necessity of a second delivery by the depositary; and it may, by a fiction of the law, have relation back to the date of its original execution, or deposit, when necessary for the purpose of doing justice or of effectuating the intention of the parties . . . and this we take to be the settled doctrine of this court. . . . In *Hall v. Harris* [5 Ired. Eq. (N. C.) 303], Pearson, J., thus states the true rule which he says is deduced from the best authorities: 'We are satisfied from principle and from a consideration of the authorities that, when a paper is signed and sealed and handed to a third person to be handed to another upon a condition which is afterward complied with, the paper becomes a deed by the act of parting with possession and takes effect presently, without reference to the precise words used, unless it clearly appears to be the intention that it should not then become a deed, and this intention would be defeated by treating it as a deed from that time.'" (Pages 96, 97.)

It is true that in the case of an ordinary escrow it is the expectation of the parties that the matter shall be fully closed up before any of them die, and where the

death of one of them intervenes it occasions a situation that was never in their contemplation, while here an arrangement was deliberately made that the practical operation of the deed should begin after the death of the grantor, and after the fulfilment of the stated conditions. But we do not perceive in this fact any reason for resorting to a fiction to support one transaction rather than the other.

To call the requirement imposed on the grantee a condition precedent to the vesting of title is to beg the question; if the title is regarded as passing with the delivery of the instrument to the custodian it is a condition subsequent, upon the non-performance of which the title will revert. So far as the grantor and his heirs are concerned there is no possible hardship in considering that when he has placed the deed beyond his recall—when in spite of anything he can do it must ultimately become fully effective—it becomes operative in contemplation of law at once. No difficulty is presented with respect to the intervening rights of creditors, because as against them no resort could be had to the fiction. The situation in this respect is not affected by the conditions attached to the final delivery, for the same distinction is made where none is imposed. Such a case was presented in *Rathmell, Exr., v. Shirey et al.*, 60 Ohio St. 187, 53 N. E. 1098, although the instrument is there spoken of and treated as an escrow. The syllabus reads:

"An instrument for the conveyance of lands without substantial valuable consideration, deposited with a third person as an escrow to be by him delivered to the grantee on the death of the grantor, does not, by relation, vest the title in the grantee at the date of the first delivery to the prejudice of persons who thereafter, without knowledge of the instrument, extend credit to the grantor."

In the opinion it was said:

"Whatever terms may be employed in stating the exception, the relation back to the first delivery is always to accomplish, and never to defeat, justice. Bearing

in mind the purpose of this exception, and the fact that the deed before us was without any substantial consideration, it is quite apparent that the conclusion of the circuit court that the relation back should be allowed to cut off the claims of those who gave credit to the testator between the first and second deliveries, and without knowledge of the instrument, is erroneous. That conclusion derives no support from *Crooks v. Crooks,* 34 Ohio St. 610, or *Ball v. Foreman,* 37 Ohio St. 132, where the title was held to pass as of the date of the first delivery for purposes clearly within the exception as above stated." (Page 198.)

The theoretical difficulties regarding the location of the title prior to the performance of the conditions, if the principle of relation is applied in this case, are really no greater than in any other where resort to the fiction is had; for instance, in those cases where there is no actual acceptance until after the grantor's death. Acceptance is of course essential to the validity of any deed, yet it is common for deeds to be upheld of the existence of which the grantee never heard in the lifetime of the grantor, his acceptance being permitted to be operative by relation as to the time the grantor surrendered control. Where its terms are purely beneficial to the grantee his acceptance is presumed, but this is only a matter of evidence.

"As stated by Justice Ventris in *Thomson v. Leach,* 2 Vent. 198, a man 'cannot have an estate put into him in spite of his teeth.' But the presumption that a person will accept a pure, unqualified gift is so strong that the courts have quite generally manifested a disposition to act upon such presumption in the interim as a working rule for the operation of conveyances." (*Emmons v. Harding,* 162 Ind. 154, 159, 70 N. E. 142.)

If under such circumstances the beneficiary should finally from any whim or caprice refuse to accept the deed, when after the death of the grantor he learns of its existence, the situation would not be greatly different from that presented by his failure to perform an affirmative act where one is required of him as a condition for its final delivery.

The question is not free from doubt, but our conclusion is that the deed here involved may be upheld upon the theory suggested.  By such research as has been practicable in the time available for the purpose we have found. but two modern cases other than those already cited in which the grantor placed a deed with a third person for delivery after his death upon conditions to be performed by the grantee.  They are *Gammon v. Bunnell,* 22 Utah, 421, 64 Pac. 958, and *McCurry v. McCurry* [Tex. Civ. App.], 95 S. W. 35.  In each of these the deed was upheld, but in neither was there any extended discussion of the effect of the conditions.

The judgment is affirmed.

GREENE, BURCH, SMITH, PORTER, GRAVES, JJ., concurring.

JOHNSTON, C. J., concurs in the judgment, but not in all said in the opinion.