INA MAY DOTY *et al.* v. THOMAS J. BARKER *et al.*

No. 15,665.   (97 Pac. 964.)

SYLLABUS BY THE COURT.

1. DEEDS—*Delivery—Evidence.* "What constitutes a sufficient delivery of a deed is largely a matter of intention, and the usual test is, Did the grantor by his acts or words, or both, manifest an intention to make the instrument his deed, and thereby devest himself of title?" (*Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490.)

2. ——— *Same.* The controlling question in this case arises upon the delivery of a certain deed. The evidence is examined and found to be sufficient to support the conclusion of the district court that the deed had been duly delivered.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed October 10, 1908. Affirmed.

*W. H. Holmes, T. F. Garver,* and *J. B. Larimer,* for plaintiffs in error.

*A. H. Case,* and *S. S. Urmy,* for defendants in error.

The opinion of the court was delivered by

BENSON, J.: This was a suit by Thomas J. Barker against his father, J. T. Barker, his brother and his five sisters, and the husband of Ina May Doty, one of the sisters. The petition in the first count, after stating the interests of the several parties, prayed for partition of eighty acres of land in Shawnee county. The second count, which alleged that Ina May was a trustee of this land for her mother, who had died, was, upon demurrer, held insufficient to constitute a cause of action. The answer of Ina May Doty and husband was a general denial, and the cause was tried upon the first count of the petition, the answers of Mrs. Doty and husband, and the answers of the other defendants setting up their interests in the land.

From the special findings it appears that on October

Doty v. Barker.

19, 1903, J. T. Barker, being the owner of the land in question, which was then occupied by his family as a residence, conveyed it to his wife, Alice Barker. The wife was not satisfied with this deed, and with her consent the name "Alice" was erased and the name "Ina May" was inserted as grantee, thereby conveying the land to their daughter, Ina May Barker. Thereupon the deed was executed by both husband and wife and placed of record. The daughter, Ina May, paid no consideration for the deed, and the intention of the husband and wife was to make her a trustee and that she should reconvey the land to her mother, Alice Barker. Mrs. Barker continued in the occupancy of the land with her minor children until her death, which occurred October 19, 1905. The brothers and sisters of Ina May frequently requested her to convey the land to her mother, and about two weeks before the mother died Ina May requested W. H. Holmes, the attorney who represented her mother in a suit for divorce then pending against her father, to prepare a deed to convey the land to her mother, who was then sick in a hospital and not expected to recover. Mr. Holmes drew the deed as requested, which Ina May then executed. She was about to take it to her mother, when, at the suggestion of Mr. Holmes, she left it in his care. Shortly afterward Ina May again called and asked for the deed, but Mr. Holmes made some excuse and the deed was still left with him. When asked by other members of the family why this deed was not recorded, Ina May answered that it was because she did not have the money to pay for such recording.

The first year after the conveyance to the daughter the mother farmed the land herself. The next year, 1905, she leased the farm to George Doty and Ina May Doty, his wife, Ina May having married Mr. Doty shortly after the execution of the deed. Ina May knew that the deed was made to her for the benefit and use of her mother, and did not, during her mother's life,

claim to own the land, but admitted that it belonged to her mother. She testified on the trial that she had made the deed conveying the land to her mother, and that if her mother lived the title passed, but if she died the title should not pass, because she did not want her father to have any part of it. This, she claimed, was the status of the deed at her mother's death. Shortly after her mother's death she procured the deed from Mr. Holmes, and burned it. Ina May and her husband have entered into a contract with Mr. Holmes to convey to him a three-fourteenths interest in the land.

The conclusions of law were as follow:

"(1) I find that the deed mentioned in finding No. 12 was delivered to W. H. Holmes, as the agent of Alice Barker; that delivery of said deed to him was delivery of the same to Alice Barker; and that said deed passed the title to Alice Barker.

"(2) I find that the plaintiff and the heirs are entitled to the relief prayed for, and that the land should be partitioned as the law requires.

"(3) I find the title to the land in the heirs as mentioned in the petition, and that the deed from Barker and wife to Ina May Barker should be canceled and held for naught."

The plaintiffs in error state the question to be decided thus:

"Under the rulings of the court on demurrers, the plaintiff was confined in his claim to the first count of the amended petition upon which the case was tried, and under the evidence that was admitted by the trial court the only question in controversy in the case, and the one upon which the case was tried and decided, was whether the said instrument signed by Ina May Barker was ever delivered to her mother, Alice Barker, and ever became effective in such manner as to devest the said Ina May Doty of the title to said property. . . . In the first *conclusion of law* the court states that the instrument signed by the said Ina May Barker was delivered to W. H. Holmes as the agent of Alice Barker, and that the delivery of said paper to him was delivery of the same to Alice Barker, and that the same passed the title to Alice Barker. There is nothing in the *find-*

*ings of fact* to the effect that the instrument from Ina May Doty to Alice Barker was ever delivered and became effective as a deed. The plaintiffs in error claim that there is no evidence to sustain the above conclusion, and, therefore, that the judgment should have been for the plaintiffs in error."

If the conclusion that the deed was delivered and passed the title to Mrs. Barker is sustained by the evidence, the judgment must be affirmed, whether such conclusion is technically one of fact or of law. The rule of law applicable to this inquiry has been stated as follows:

" 'What constitutes a sufficient delivery is largely a matter of intention, and the usual test is, Did the grantor by his acts or words, or both, manifest an intention to make the instrument his deed, and thereby devest himself of title?' (*Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490.)" (*Kelsa v. Graves,* 64 Kan. 777, 779, 68 Pac. 607.)

It appears that a few months after the deed from the father and mother to Ina May had been made Mrs. Barker commenced a suit for divorce, retaining Mr. Holmes as her attorney, who thereupon called upon the register and received the deed. Mr. Barker left the family home soon after that deed was made, and did not live there afterward. Mrs. Barker, being sick, was taken to a hospital, and while she was in the hospital other members of the family requested Ina May to make a conveyance to her of the lands in question. In accordance with this request Ina May went to Mr. Holmes's office for that purpose. She testified that one reason for making the deed was that she was about to be married. Testimony was given that she told Mr. Holmes that the members of the family had complained that her intended husband might lay claim to the property, and that she wanted to convey it herself before marriage. Her father testified that she told him that she had made the deed before she was married, and that when he told her it ought to have been recorded

she said: "I did n't have the money to put it upon record." She was married to Mr. Doty in a few days after signing the deed, and her mother died in about three weeks after that time. Soon after her mother's death she said, in speaking of the deed to her sister, as the latter testified, that she felt that it was a great responsibility to have the place, that she was glad the deed was made over to all alike, and that she did not want any more trouble over it; that it would be better never to mention the deed, but that she did not intend to hold the property; that she intended to divide it fairly among the heirs, as had been the wish of all.

Her brother testified that she told him she had made the deed to her mother and left it at Mr. Holmes's office, where it was made, for her mother; that she was glad she did not have to bother about it any more, since she had made it over to her mother. After destroying the deed, which she did in a month after her mother's death, Mrs. Doty refused to give to the plaintiff any note or memorandum to show that her brothers and sisters had an interest in the land. The testimony of Mrs. Doty and of her sister who accompanied her to Mr. Holmes's office fairly tends to show that she went there for the purpose of conveying this land to her mother, comformably to the wishes of the family, and not merely to sign a paper that she might afterward deliver or not as she chose; and the sister's testimony is to the effect that Mrs. Doty called at Mr. Holmes's office the second time for the deed, in order to give it to her mother. The sister's testimony concerning what took place at this second call is as follows:

"Ques. What did your sister tell him [Mr. Holmes]? Ans. She said we had all wanted the deed, so we mentioned getting the deed, and he talked in a way to pacify her and we left the office and went home.

"Q. What did she tell him she wanted? A. She said she wanted the deed, or our mother had wanted to see it, and all the girls had wanted it out of the office, and

Doty v. Barker.

I especially had urged her to take it from the office, so we went there for it.

"Q. You simply told him you wanted the deed; that your mother wanted to see it? A. Yes. But we were late anyway, so we were hurrying, and left the office and said that we would get it some other time.

"Q. What did Holmes say in regard to the request to get the deed? A. Well, I don't remember; I don't suppose he could find it."

The deed in question was left with Mr. Holmes, it seems upon his request. He already had the possession of the deed made by the father and mother to Ina May, and was then acting as attorney for the mother in the suit for divorce. Whether the deed was so executed by Ina May and left with him for her mother, with the intention thereby to devest herself of title and to vest such title in her mother, was a question to be decided by the court upon the testimony referred to, and other evidence of a like nature. As stated in *Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490, the court was authorized to determine this question of delivery, which is largely a matter of intention, from the words and acts of the grantor. The evidence of such words and acts, in the light of all the circumstances, was sufficient to warrant the conclusion reached by the court. The fact that some of the testimony referred to was contradicted is immaterial, for findings based upon conflicting evidence must stand if there is competent evidence which, if believed and acted upon, supports the findings.

The judgment is affirmed.