No. 35,186

Elizabeth Ossweiler Stump, *Appellee*, v. Andy Smarsh et al., *Appellants*.

(113 P. 2d 1058)

. Opinion filed June 7, 1941.

*A. V. Roberts, Paul W. Schmidt, Verne Roberts, Rupert Teall* and *Clement Clark,* all of Wichita, for the appellants.

*S. S. Alexander* and *Woodrow B. Morris,* both of Kingman, for the appellee.

The opinion of the court was delivered by

Harvey, J.: Alleging she was the owner of a described quarter section of land in Sedgwick county which she was occupying as her homestead, plaintiff brought this action against the sheriff and judgment creditors to enjoin them from selling the land under an execution. The trial court made extended findings of fact, also conclusions of law, and rendered judgment for plaintiff. Defendants have appealed.

The facts found by the court, or otherwise shown by the record, may be summarized as follows: Plaintiff's father, Theodore Ossweiler, was a well-to-do farmer and businessman of Sedgwick

county. He owned several farms, including the farm in question. On July 14, 1922, he conveyed the land in question to plaintiff by a warranty deed, which contained a paragraph requiring the grantee to pay him $200 annually as long as he lived and prohibiting her from selling or encumbering the land within his lifetime. On November 12, 1925, plaintiff and her husband executed a quitclaim deed for the land to her father. The next day, November 13, 1925, plaintiff's father conveyed the land by warranty deed to plaintiff for life, with remainder to her issue. The deed included the paragraph requiring the payment to the grantor of $200 annually and prohibiting the grantee from selling or encumbering the land during his lifetime. Early in 1929 there was oil development in the vicinity of this land and there was an opportunity to lease it for gas and oil and a prospect of selling some of the mineral rights to the land. The condition of the title made it difficult to do this. At that time plaintiff was indebted to her father for some of the annual payments, and had other debts, and there were unpaid taxes on the land. There was an oral agreement between plaintiff and her father that plaintiff and her husband would reconvey the land to him, he would execute the oil and gas lease, and also a conveyance of mineral rights, if a purchaser could be found, and if not, that he would execute a mortgage on the property for money sufficient to pay up plaintiff's then indebtedness. In the carrying out of this agreement plaintiff and her husband, on Februray 27, 1929, conveyed the land to her father by a quitclaim deed. After this deed was made plaintiff's father leased the property for oil and gas and placed a mortgage thereon of $2,100 to a trust company at Wichita. The taxes and plaintiff's indebtedness to her father and others was paid out of the proceeds of the lease and mortgage. Beginning in 1929, Theodore Ossweiler kept an account book respecting the farm in question containing this heading on one sheet in his own handwriting: "Expenses paid by me for Elizabeth and John Stump in the year 1929." On another sheet, starting in 1929, in his own handwriting, were entered the items of income from this farm. These entries were made continuously down to and including the year 1937. On the date of March 7, 1930, the books showed the account to be balanced, and on that date plaintiff's father executed a general warranty deed for the land in question to plaintiff. After executing the deed he called plaintiff to his home and told her about all the various transactions and handed her the deed and told her about it. Plaintiff told

her father to take care of it, for she would not know what to do with it. At sometime later her father took the deed to the bank, where he had a safety deposit box, and placed it therein. In November, 1936, he asked his son, Theodore, Jr., to go with him to the bank. There they looked through his papers and among others was an envelope containing this deed, on which there was written plaintiff's name in longhand. He told Theodore, Jr., that this contained Lizzie's deed, which was to her farm, and asked his son to record it as soon as he, the father, was dead. They then took this, with other papers, to the father's home and placed it in a bookcase. The father asked the son to note where it was so he could record it after the father's death, and after the father's death the son saw the deed and took it to the courthouse and recorded it, January 19, 1938. Among other things the court found:

"At all times from and after the execution of this deed, Mr. Ossweiler treated the land as that of his daughter, the plaintiff herein, and frequently spoke of it as her land. At the time he told her where her deed was, he expected her to receive it and considered that she had received it and he was keeping it for her at all times thereafter by her request. He desired to have her own the land and income therefrom, and that the same should be sufficient for her keep and maintenance."

Plaintiff and her husband moved onto this land in February, 1930, with their furniture, farm machinery and livestock. They occupied it as a homestead. Plaintiff's husband died in September, 1930, and she continued to reside upon the land, pursuing the usual occupations of one living upon a farm, until about 1935 or 1936, when because of financial conditions she found herself obliged to work, and worked for some time at White City, Kan., keeping house for her employer. During this time she maintained a room at her home and kept considerable of her furniture there; also some farming tools, machinery and cattle. She returned from time to time for short periods, occupying her room. She looked upon the farm as her home, and at all times expected to return to it permanently. She has had no other homestead and has considered this her homestead.

On September 11, 1929, Theodore Ossweiler executed his will, and on January 28, 1932, a codicil thereto, and on February 21, 1934, a second codicil, and neither in the will nor codicils was any reference made to the land in question, although the will disposed of other lands, being all the land he owned, unless the land in question should be regarded as belonging to him. On December 31, 1937, he made a further codicil to his will, placing $1,000 in trust for plaintiff, pro-

viding that should the income from the land in question be insufficient to properly keep or maintain her, the trustee would pay such portion of the trust fund as was deemed advisable for the maintenance of plaintiff. Theodore Ossweiler died January 13, 1938. The land in question never was inventoried as a part of his estate. After his death it appears that plaintiff consulted an attorney in Wichita something about the estate. Some time later this attorney asked the attorney of the executor to get for plaintiff a quitclaim deed from her brothers and sisters. The attorney for the executor got those deeds, but neither plaintiff nor the attorney who requested that they be procured ever called for them. They never have been delivered to the plaintiff, nor to anyone representing her, and it is not at all clear from the evidence that she requested her attorney to get them, or knew they had been procured.

In 1933 certain of the defendants procured judgments in the district court against the plaintiff on notes which she and her husband previously had executed. After the death of plaintiff's father executions were issued on these judgments and placed in the hands of the sheriff, with the request that he levy upon and sell the land in question as the property of plaintiff for the payment of the judgments.

After finding the facts more in detail than we have stated, the trial court made the following conclusions of law:

"That following the deed of February 27, 1929, Theodore Ossweiler held the property in trust by oral agreement for the plaintiff until the execution and delivery of the subsequent deed.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"That the execution of the deed of March 7, 1930, and the acts and circumstances following thereon, constituted a delivery of the deed in question to the plaintiff herein, and that she has been the absolute owner of the real estate in question since on or about March 8, 1930, subject only to the mortgage of the  .  .  .  Trust Company.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"The property in question was the homestead of the plaintiff and her husband prior to his death, and has since that time continued to be the plaintiff's homestead.

"The plaintiff is entitled to have her title to such real estate quieted and established as against the defendants and each of them, and that the defendants should be and are hereby enjoined from selling the land described."

Judgment was rendered in harmony with the conclusions of law.

Arguments on behalf of appellants may be summarized as follows: Under the rules of law applicable to the facts there was no delivery of the deed of March 7, 1930, hence plaintiff had no title to the

property prior to the death of her husband in September, 1930, upon which a claim of homestead could be based; that plaintiff's father at no time held title to the property in trust for plaintiff; that plaintiff acquired the title to the property in this manner: Since the farm in question was not disposed of by her father's will it passed to his heirs under the statute of descent. Plaintiff was one of the heirs and inherited a share of the property. She later acquired the remainder of the shares by deeds executed by her brothers and sisters at the request of the attorney for the executor.

The principal point relied upon by appellants is their contention that the deed of March 7, 1930, never was delivered prior to the death of plaintiff's husband, or prior to the death of the grantor. In support of this contention they cite *Hush v. Reeder,* 150 Kan. 567, 576, 95 P. 2d 313, where the court quoted approvingly from *Young v. McWillams,* 75 Kan. 243, 245, 89 Pac. 12, as follows:

"Where one who has executed a deed retains it in his own possession, with the intention that it shall become operative upon his death, no conveyance is effected. He dies in the full ownership of the property and the title passes to his heirs or devisees."

Also, quote from *Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490, where the rule is stated thus:

"Before a deed can operate as a valid transfer of title there must be a delivery of the instrument which becomes effective during the life of the grantor."

Also, from 18 C. J. 417, where it is said:

"Where a deed which has been duly executed and acknowledged is subsequently found in the possession of the grantor, a presumption arises that it was never delivered (citing *Burton v. Boyd,* 7 Kan. 17), and the burden of proof rests upon the party claiming under the deed."

Counsel also cite *Stone v. French,* 37 Kan. 145, 14 Pac. 530; *Worth v. Butler,* 83 Kan. 513, 112 Pac. 111; *Alward v. Lobingier,* 87 Kan. 106, 123 Pac. 867; *Hoard v. Jones,* 119 Kan. 138, 237 Pac. 888; *Poteet v. Knappenberger,* 139 Kan. 534, 31 P. 2d 1003; *Roberts v. McCoach,* 145 Kan. 407, 65 P. 2d 289; *Fulton v. Menefee,* 146 Kan. 150, 68 P. 2d 1112, all of which cases deal with the necessity of the delivery of the deed during the lifetime of the grantor. Many more of our cases are collected in *Hush v. Reeder,* supra, at page 576.

The question of whether the deed was effectively delivered during the lifetime of the grantor is largely one of the intention of the grantor. See *Balin v. Osoba,* 76 Kan. 234, 91 Pac. 57; *Doty v.*

*Barker*, 78 Kan. 636, 97 Pac. 964; *Zeitlow v. Zeitlow*, 84 Kan. 713, 115 Pac. 573; *Smith v. Dolman*, 120 Kan. 283, 243 Pac. 323; *McLain v. Barr*, 125 Kan. 286, 264 Pac. 75; *Central State B. & L. Ass'n v. Bitler*, 149 Kan. 349, 87 P. 2d 631. That the intention of the grantor with respect to delivery was controlling was held in many of the other cases above cited or referred to.

In this case, under the facts found, the court concluded as a matter of law that the deed in question was effectively delivered on March 8, 1930. Our real problem is to determine whether there is substantial, competent evidence to support these findings and conclusions. The pertinent facts bearing on that question may be summarized as follows: Plaintiff acquired title to this land by a deed from her father on July 14, 1922. In November, 1925, by an exchange of deeds, the nature of that title was somewhat altered, but she continued to have an estate in the land. When taxes and debts had accumulated in 1929, in order that they might be handled advantageously, it was agreed between plaintiff and her father that plaintiff and her husband would convey the land to him, that he would execute an oil and gas lease thereon, sell some of the mineral rights if he could find a buyer, and if not, execute a mortgage on the land to secure money to pay taxes and indebtedness, and that he would then reconvey the land to plaintiff. Now there is no question under this evidence about this parol agreement having been made. It is thoroughly sustained by the testimony of witnesses who were not interested in the outcome of this suit. Appellants do not contend otherwise. Plaintiff's father promptly set up an account of moneys received and disbursed and designated the accounts as pertaining to plaintiff's land. This was done soon after the deed to him was executed in February, 1929, and indicates his idea that although he was then holding the title under that deed the land belonged to plaintiff. He handled the business matters connected with the receipts and disbursements pertaining to this farm until the books were balanced on March 7, 1930, when he promptly executed a deed to plaintiff for the land. He sent for plaintiff, who went to his home the next day; told her what he had done; that he had executed the deed to her for her land. There is a little quibble about just the language used. We shall not take time to set that out extensively. We are confident, however, the court was justified in finding that the grantor gave the deed to plaintiff and she asked him to take care of it for her. Where a deed is effectively delivered, the

fact that it is handed back to the grantor for some purpose does not defeat the delivery. The subsequent evidence is to the effect that the grantor did keep it for plaintiff for several years in his lockbox at the bank, where it was kept in an envelope, marked with plaintiff's name, as belonging to her. Then the grantor handed it to his son, told him it was plaintiff's deed to her land and to keep track of it and record it after his death. In 1929 plaintiff's father made his will. He did not include the land in question in the property disposed of in his will, even though at that time title stood in his name, indicating that even then he did not regard the land as his; and the subsequent codicils to the will, and particularly the last one, indicated clearly that he regarded this land as belonging to his daughter. Apparently his children so understood it, for at the request of the attorney for the executor they executed deeds to the plaintiff. Considering all these things we think the court was fully justified in finding there was an effective delivery of the deed in question.

The transaction of the execution of the deed of March 7, 1930, and the delivery of it to plaintiff next day, occurred more than three years before appellants obtained their judgments against plaintiff. There is no claim on appellants' part that this transaction was fraudulent as to them, or that the debts were then in existence which finally ripened into judgment.

Appellants contend that the oral agreement between plaintiff and her father in February, 1929, was void under our statute pertaining to trusts. (G. S. 1935, 67-401.) This statute does not prohibit the carrying out of such oral agreements when the parties desire to do so. If there had been no such oral agreement plaintiff's father could have deeded her the land. Hence, the question whether that agreement was valid is of no particular importance in this case.

Plaintiff and her husband moved upon this land with their household goods, farming equipment and livestock in February, 1930. Both plaintiff and her husband lived on the land and made it their home until his death in September of that year. We regard it as not material whether plaintiff actually had title to the land at the time they moved upon it in February, since they did get title by the delivery of the deed on March 8, and the homestead may be regarded as commencing either when they first went there, or on the date of the delivery of the deed.

Appellants argue that even though this became the homestead of plaintiff that she abandoned the homestead when she commenced

working for people in 1935 and 1936. We think this contention is untenable. She and her husband had a homestead in the place prior to his death, and as long as she continued to live on the place it was her homestead. (*Weaver v. Bank*, 76 Kan. 540, 94 Pac. 273.) When she went away to work for people in 1935 or 1936 she kept her household goods, cows and farm implements on the place and returned to it at her convenience and considered and regarded it as her home. (See *Farmers State Bank v. Weeks*, 138 Kan. 376, 26 P. 2d 262, and cases there cited.)

We find no error in the record. The judgment of the court below is affirmed.