No. 41,904

ORVILLE J. COLE, as Ancillary Administrator of the Estate of Ida May Hoefflin, Deceased, *Appellee,* v. KENNETH G. HOEFFLIN, *Appellant.*

(354 P. 2d 362)

Opinion filed July 15, 1960.

*Gwinn G. Shell,* of Garnett, argued the cause and was on the brief for the appellant.

*Orville J. Cole,* of Garnett, argued the cause, and *Roy L. Cole,* of Garnett, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action to set aside a deed on the ground of nondelivery during the lifetime of the grantor. The trial court set it aside on that ground and the grantee has appealed.

Ida May Hoefflin, a widow, owned a tract of land in Oklahoma, several lots in Wichita, and a quarter section of land in Anderson county. We are concerned here with only the last-mentioned tract. She had two adult children, Laverna E. Holcombe and Kenneth G. Hoefflin. Laverna lived in Los Angeles, California, and Kenneth lived in Globe, Arizona. Their mother, Ida May, also lived in California and about one mile from Laverna's home.

In January, 1947, the mother executed deeds to all of her real estate. Some of the lots in Wichita were deeded to Kenneth and some to Laverna. Laverna was named as grantee in the deed to the Oklahoma property, and Kenneth was named as grantee in the deed to the Anderson county property. In each of the several deeds the mother reserved a life estate.

At or shortly after the time the deeds were executed the mother handed all of them to Laverna so that they could be put in Laverna's bank safety deposit box. The mother gave Laverna no instructions whatsoever. The mother had no safety deposit box of her own, and

the record does not disclose whether she had access to Laverna's box.

In 1951 the mother asked Laverna for the deeds and mentioned that she intended to sell her Kansas real estate. Laverna got the Kansas deeds and gave them to her mother. Laverna never saw the Kansas deeds again until after her mother's death, intestate, which occurred in Los Angeles on October 11, 1955. Kenneth knew that he was the grantee in the deed to the Anderson county property, and while in California attending his mother's funeral he and Laverna made a diligent search through her personal effects to find the deed. It was not found and in a few days he returned to his home in Arizona.

Laverna was appointed administratrix of her mother's estate in California, and she and Kenneth had correspondence concerning the missing deed. Apparently through the advice of a California attorney, Laverna and Kenneth were apprised of the necessity of delivery of a deed in order to make it valid, and of the further fact that in the event of nondelivery of the deed in question the Anderson county property would be considered as a part of the mother's estate for the purposes of administration, thus resulting in increased court costs and attorney fees.

Meanwhile Laverna, knowing well her mother's propensity for "saving everything and never throwing anything away," continued to search through her mother's personal effects. Finally, in January, 1956, about three months after her mother's death, she found an old tin box belonging to her mother and which, together with other things, had been stored in the attic of Laverna's garage. In this box were all of the deeds to the Kansas properties which had been executed in 1947, and which Laverna had handed back to her mother in 1951. Laverna had not seen them in the meantime. Also in the tin box were some old recipes, medicine and clippings, one of which concerned Kenneth while he was in high school in Wichita.

Laverna wrote to Kenneth and told him that she had found the deed in question. In this letter she stated:

"Remember at all times it has been among *your* things."

She mailed the deed to Kenneth and he immediately caused it to be recorded in Anderson county.

Some time between 1951 and the date of her death in October, 1955, the mother sold all of her Kansas real estate with the exception of the tract in Anderson county, the deed to which is here

in issue. She had made no further disposition of her Oklahoma property, and in the meantime (although the record is not clear as to just when) Laverna had caused the deed to that property to be recorded.

Orville J. Cole was subsequently appointed as ancillary administrator of the mother's estate in Kansas, and he brought this action to set aside the deed to the Anderson county property which had been mailed to Kenneth by Laverna, and which he had caused to be recorded. The petition alleged that the deed was null and void and conveyed no interest to Kenneth for the reason that it was never delivered to him during the lifetime of his mother but was found among her personal effects following her death.

Kenneth filed an answer in the form of a general denial, and upon the issues thus joined the parties proceeded to trial.

The evidence consisted chiefly of the testimony of Laverna and it brought out the facts as heretofore related. In addition, she admitted that the statement in her letter to Kenneth to the effect the deed in question was found among *his* things was not literally correct and that it was prompted by the desire that the Anderson county property not be included in her mother's estate—thus to avoid additional expenses of administration.

Kenneth, the only other witness, testified that he knew about the deed; that he knew of no reason why it was not to be considered as an effective deed, and that he understood that it was such.

At the conclusion of the trial the court found the facts to be substantially as related, and, following the general rule to the effect that when a person who has executed a deed never delivers it but retains it in his own possession with the intention that it shall become operative upon his death no conveyance is effected, held that the deed should be set aside for failure of proof that it was delivered to Kenneth or to anyone to be held for him during the lifetime of the mother.

From that judgment Kenneth has appealed, and, while five specifications of error are alleged, the only question in the case is whether the judgment is supported by the findings—in other words, do the facts show there was a valid delivery of the deed during the lifetime of the mother?

The facts are not in dispute. The court found them to be precisely as developed from the witness stand, and so we have no question whether the findings are supported by the evidence. They are.

We do, however, disagree with the trial court's conclusion to be drawn from those facts and hold that they do not support the judgment rendered.

The general rule with respect to delivery of deeds is well stated in *Young v. McWilliams,* 75 Kan. 243, 89 Pac. 12, where, at page 245, it was said that where one who has executed a deed retains it in his own possession with the intention that it shall become operative upon his death no conveyance is effected and he dies in the full ownership of the property, but where he deposits it with a third person to be turned over upon his death to the grantee this is a good delivery if he thereby surrenders all control over it, but not otherwise, and that in such a case the title is deemed to vest at once in the grantee with only the enjoyment of the property being postponed, a condition which the grantor is competent to create and which arises whenever a purpose on his part to establish it is sufficiently manifested, whether by express instructions to the depositary or otherwise. At page 250 of the opinion, language from an Ohio case to the effect that where a grantor reserves to himself a life estate it is indicative of an intention to effect a present conveyance of a present estate to be enjoyed in the future, was quoted with approval.

In *Smith v. Dolman,* 120 Kan. 283, 243 Pac. 323, it was said that delivery is largely a matter of intention, and if the grantor by words or acts manifests an intention to divest himself of title and vest it in another it is sufficient to constitute a delivery.

In *Tucker v. Allen,* 16 Kan. 312, 319, it was said that an actual or formal delivery of a deed is unnecessary; that a deed may be good by constructive delivery as well as by actual delivery, and that any words or acts showing an intention on the part of the grantor that the deed be considered as completely executed and the title conveyed is sufficient. To the same effect is *Kelsa v. Graves,* 64 Kan. 777, 68 Pac. 607. See also *Zeitlow v. Zeitlow,* 84 Kan. 713, 717, 718, 115 Pac. 573.

In *Stump v. Smarsh,* 153 Kan. 804, 809, 810, 113 P. 2d 1058, it was said that where a deed is effectively delivered the fact that it is handed back to the grantor for some purpose does not defeat the delivery. See also *Hutton v. Hutton,* 184 Kan. 560, 565, 566, 337 P. 2d 635.

Despite the fact the deed in question was found among the mother's personal effects after her death, we think that from all of

the surrounding facts and circumstances there was a valid and effective delivery of the deed to Kenneth when the mother gave it to Laverna to be put in Laverna's safety deposit box in 1947, immediately after its execution. Had the mother died the next day we have no doubt but that the circumstances would have compelled a holding that Laverna was in fact the custodian of the deed for Kenneth during the mother's lifetime and that delivery to her was in fact a constructive delivery to him. Despite the fact no specific instructions were given to Laverna, the clear inference is that the mother intended that Laverna deliver the deed to Kenneth following her death. She reserved a life estate and the question might be asked—if she intended no present interest to vest in Kenneth, then why did she make the reservation? In other words—how can a life estate be reserved by a grantor if the grant does not take effect until he dies?

It is true that in 1951 the mother requested that Laverna get the deeds for her, mentioning that she intended to sell her Kansas properties. Laverna did as requested and gave her the Kansas deeds. From then until her death the mother was in possession of them. But, even though they came into her possession, such fact would not—and did not—defeat the delivery previously made in 1947. Also, we think it is significant that although she sold her other Kansas properties she did not sell the property in question, which is indicative of a feeling and understanding on her part that it already had been conveyed to Kenneth.

All things considered, we think it may not be said there was no valid delivery of the deed to Kenneth during the lifetime of the mother. The result is that the trial court arrived at an erroneous conclusion from the facts, thus requiring a reversal of the judgment.

It is so ordered.

PRICE, J., dissenting: Because I am convinced that this case has been decided incorrectly I feel compelled to dissent and will state my views briefly:

The facts are not in dispute and neither is there any dispute as to what the established rules of law are with respect to what constitutes a valid delivery of a deed. The general principles are set out in the opinion for the court and I have no quarrel with them. I disagree, however, that the facts compel the conclusion there was a valid delivery of the deed in question.

The important inquiry here is whether the mother gave the deed to Laverna intending thereby to vest in Kenneth, immediately, title to the remainder. If the mother retained "control" of the deed the situation was substantially the same as though she had held it in her own possession. Where a grantor deposits a deed with a third person to be turned over upon his death to the grantee there is a good delivery if he thereby surrenders all control over it, *but not otherwise.* (*Young v. McWilliams,* 75 Kan. 243, 245, 246, 89 Pac. 12.)

In *Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490, it was held (syl. 1) that before a deed can operate as a valid transfer of title there must be a delivery of the instrument which becomes effective during the life of the grantor, and in the course of the opinion it was said:

"It is not essential, however, for the grantor to deliver the instrument to the grantee in person. An unconditional delivery to a third person for the use and benefit of the grantee, where the grantor intends to divest the title and to part with all control over the instrument, is ordinarily a sufficient delivery. What constitutes a sufficient delivery is largely a matter of intention, and the usual test is,

"Did the grantor by his acts or words, or both, manifest an intention to make the instrument his deed, and thereby divest himself of title? When the deed has passed beyond the control of the grantor, and he has placed it in the hands of a third person with a declared or manifest purpose to make a present transfer of the title, a formal acceptance by the grantee is not required." (p. 337.)

In *Worth v. Butler,* 83 Kan. 513, 112 Pac. 111 (opinion denying rehearing 84 Kan. 887, 112 Pac. 836) it was said:

"While delivery is largely a matter of intention, still it must appear, . . . that the deeds have passed beyond the control of the grantor. In this case it distinctly appears that they had not. The grantor was exercising an active control over them a few days before her death, and they were still under her dominion and in her possession when death came." (p. 520.)

In *Hush v. Reeder,* 150 Kan. 567, 95 P. 2d 313, after citing many of our decisions, it was said:

"Under these authorities when the owner of real property executes a deed for it and places it in the hands of some third person to be delivered to the grantee after the death of the grantor, in order to make such delivery effective the grantor must have parted with the possession of and all the dominion and control of the deed." (p. 576.)

In *Hoard v. Jones,* 119 Kan. 138, 237 Pac. 888, it was held that ordinarily the question of the delivery of a deed is one of fact to be determined by the jury or trial court from all of the evidence pertaining to the matter, but that where the facts are not controverted it is a quesion of law to be determined by the court.

Laverna had a safety deposit box in the bank. The mother had none. She gave the deeds to Laverna with "no instructions whatsoever." The only reasonable inference to be drawn is that she gave them to Laverna for "safe keeping." That she did not intend thereby to surrender all possession and control over them is indicated by the fact that in 1951 she requested Laverna to get them for her, mentioning that she "intended to sell her Kansas real estate." From then on until her death four years later the deeds were in her possession and were found among her personal effects after her death. I concede that the fact the deed in question later came into her physical possession would not in and of itself defeat or nullify a prior *valid delivery*—if in fact one was made—but in my opinion there was absolutely no evidence to establish a delivery, actual or constructive, to Kenneth during her lifetime. This is not a case such as where a grantor executes a deed and places it out of his reach and in the hands of a third party with directions to deliver it to the grantee after the grantor's death. (*Nolan v. Otney*, 75 Kan. 311, 89 Pac. 690, 9 L. R. A. (NS) 317; *In re Estate of Hulteen*, 170 Kan. 515, 227 P. 2d 112; *Hicklin v. DeVore*, 179 Kan. 345, 295 P. 2d 668.) All of the facts point to just the opposite.

In the opinion for the court attention is called to the fact the mother reserved a life estate, and mention is made that if she intended no present interest to vest in Kenneth then what was her purpose in making the reservation. Perhaps so, but is it not more logical to conclude that if she intended to reserve to herself *only* a life estate and to vest the remainder *immediately* in Kenneth, she would have delivered the deed to him at *that* time, in which event she still would have her life estate, if that is all she desired to retain in the property?

In the early case of *Burton v. Boyd*, 7 Kan. 17 (1871), it was held that if a deed which shows upon its face that it was signed and acknowledged but does not show upon its face or elsewhere that it was ever delivered, be found in the possession of the grantor at the time of his death, the presumption from such fact is that the deed was never delivered, and the burden of proof rests with the party claiming that it was delivered to prove delivery. (Syl. 5.)

In 26A C. J. S., Deeds, § 184, p. 17, the rule is thus stated:

"Where a deed which has been duly executed and acknowledged is subsequently found in the possession of the grantor, a presumption arises that it was never delivered, and the burden of proof rests on the party claiming under the

deed. This rule applies where a deed is found among the papers of the grantor after his death."

To the same effect see 16 Am. Jur., Deeds, § 386, p. 657.

In my opinion the evidence in this case, when measured in the light of established rules of law on the subject, fell far short of showing a valid delivery of this deed during the lifetime of the grantor. I think the trial court reached a correct decision and that the judgment should be affirmed.

SCHROEDER, J., dissenting: I fully concur in the dissenting opinion of Price, J., but make this additional observation.

The proposition of law is undisputed in this jurisdiction that before a deed can operate as a valid transfer of title there must be a delivery of the instrument which becomes effective during the life of the grantor. Delivery, however, is largely *a matter of intention.* But it is the *intention of the grantor* that is material, and not the intention of the grantee or recipient of the deed. The intention of the grantor in such case is a question of fact, unless the evidence giving rise to the facts in the case is uncontroverted, in which case it is said to be a question of law to be determined by the court.

In my opinion the crux of the whole case rests upon the following uncontroverted evidence, which is the testimony of Laverna E. Holcombe, the daughter of the decedent:

"Q. Now at the time in 1947 when your mother delivered these seven deeds to you, or gave them to you, did she give you any instructions?

. . . . . . . . . . . . . .

"A. The answer is no.
"Q. Were these deeds subsequently returned to your mother?
"A. They were returned to my mother in 1951 or '52.
"Q. All of them?
"A. All of them.
"Q. With the exception of the Oklahoma property?
"A. Yes.

. . . . . . . . . . . . . .

"Q. Why did your mother deliver those deeds to you in 1947?
"Mr. Shell: I think she should state whether she knows first.
"Q. Do you know why she delivered them to you?
"A. Yes.
"Q. Why?
"A. *Because she wanted them put in my safety box since she didn't have a safety box.*
"Q. She did not have a safety box herself?
"A. Not at that time.

"Q. Now you retained these deeds until 1951? Is that correct?

"A. Yes.

"Q. And what happened then that caused you to part with them?

"A. My mother asked for them.

"Q. And did you deliver them back to her?

"A. I delivered them back immediately when she asked for them. She had already sold the five lots and said she thought she would sell some other property and wanted the deeds back in her possession.

"Q. And you gave them back to her?

"A. I gave them back to her.

"Q. Now are you talking about the Oklahoma property, too?

"A. No, not the Oklahoma property because she never had any idea of selling it and it was in my box." (Emphasis added.)

The only logical inference to be drawn from the foregoing evidence *is* that the decedent had no intention to make a valid delivery (used in the legal sense) conveying the property at the time she gave the deeds to her daughter for safe keeping in 1947.

In my opinion the decision of the trial court should be affirmed.

PRICE, J., concurs in the foregoing dissenting opinion.