EARL WORTH, *a Minor, etc., Appellant*, V. J. T. BUTLER,
*Appellant,* and GEORGE E. BUTLER *et al., Appellees.*

No. 16,717.

SYLLABUS BY THE COURT.

1. DEEDS—*Reservation.* The effect of a clause in an instrument,
otherwise in the usual form of a warranty deed, reserving the
use and possession of the premises for the life of the grantor,
with the right to a reconveyance whenever demanded, is re-
ferred to but not decided.

2. ——— *Delivery.* The rule that before a deed can operate as
a valid transfer of title there must be a delivery of the in-
strument (*Wuester v. Folin,* 60 Kan. 334) is applied to the
evidence, and it is found that there was no evidence to sustain
a finding of delivery.

3. PRACTICE, SUPREME COURT—*Directing Judgment—Retrial of
Issues of Fact.* Where an issue was fairly tried after full op-
portunity had been afforded to present the case, and there was
no accident or surprise nor any ruling causing a party to
withhold his evidence, and all the facts appear to be fully pre-
sented by the evidence, leaving only questions of law to be de-
cided, this court may, under the revised code, in the further-
ance of justice, direct the entry of a proper judgment by the
district court when the judgment of that court is reversed.

Appeal from Jewell district court. Opinion filed De-
cember 10, 1910. Reversed.

*R. W. Turner,* and *G. H. Bailey,* for the appellants.
*W. R. Mitchell,* for the appellees.

The opinion of the court was delivered by

BENSON, J.: Earl Worth, the plaintiff, alleging that
he owned an undivided one-sixth of 200 acres of land
by inheritance from his deceased grandmother, Barbara
E. Butler, sued for partition. J. T. Butler, one of the
defendants, claimed one-half of the land as the surviv-
ing husband of Barbara E. Butler. The other defend-
ants, George E. Butler and Minnie Higbee, her sole
surviving children, claim to own the land in fee as

33—83 KAN.

grantees in instruments which they allege convey 160 acres of the land to George E. Butler and 40 acres thereof to Minnie Higbee. These instruments are dated November 25, 1907. Barbara E. Butler died on May 19, 1908. The plaintiff and J. T. Butler are entitled to partition unless the instruments referred to operate as valid conveyances.

Two objections are made to these instruments: (1) That they were never delivered to the grantees, and (2) that they conveyed no interest. The latter objection is based upon the following clause appearing in each deed, after the description and preceding the habendum:

"This deed is executed upon the express agreement and understanding between the said first and second party that the said first party reserves the right to possession of said premises during her lifetime, also a life lease to said real property, and with the further understanding that if the said grantor, B. E. Butler, desires or requests a reconveyance of the above-described real property from the said grantee, his heirs or assigns, to the said grantor, B. E. Butler, then and in that event the said grantee agrees to reconvey upon notice from said grantor."

Otherwise the instruments are in the ordinary form of warranty deeds. The argument to sustain the objection is that no estate *in præsenti* was intended, and any future estate depended on the will of the grantor, who reserved possession for life and the power to revoke at pleasure. On the other hand, it is contended that the reservation of a life estate does not prevent the immediate vesting of the remainder, subject to the exercise of the right to a reconveyance in the lifetime of the grantor. The question thus presented, in some of its phases, has been the subject of much judicial consideration; but, as delivery must appear before interpretation becomes necessary, that matter will be first considered.

A jury found that the instruments had been delivered to the grantees, and the court, holding that they were

valid conveyances, refused partition. The appellants, however, contend that there was no evidence of delivery, and that all the evidence on the subject proves that Barbara E. Butler retained them in her possession and control until her death. Motions to set aside the findings and for a new trial were denied.

Preliminary to a review of the evidence it should be stated that in an action for divorce, brought by Barbara E. Butler against her husband, a judgment was rendered in November, 1906, refusing a divorce but awarding to her the lands in question as her separate property, and ordering her husband to join her in conveyances thereof as she might request. She then occupied the premises as her home, and continued to do so until her death. Her son George and his wife shared the occupancy with her and remain in possession. The instruments in question contain the names of Barbara E. Butler and J. T. Butler as grantors and warrantors, and were drawn in form for execution by both. After they were signed by Mrs. Butler her husband, although requested by letter, refused to execute them, and returned them to her by mail, sometime in the early winter of 1907. In March, 1908, George E. Butler, who was present when his mother signed the deeds, saw them in her possession. Concerning this he testified:

"Ques. Who had them at that time? Ans. Well, they were there in the house.

"Q. Answer the question. A. Did n't anyone have them when I saw them.

"Q. Where were they? A. In a drawer in the machine—sewing machine.

"Q. Your mother's machine? A. My wife's machine.

"Q. They were in the drawer? A. Yes, sir.

"Q. Who called your attention to them? A. My mother."

Referring to the same matter, he testified that he came home from Oklahoma in March, 1908, and further:

"Ques. She kept them and said nothing to you about

them from the 4th day of. December, 1907, until some-time in March, 1908? Ans. She wrote to me about them.

"Q. Have you got the letter she wrote to you? A. No, sir; I have n't.

"Q. You have not? A. No, sir.

"Q. Then from March she kept the deeds up to the 2d of May, 1908, when she gave them to you? A. She showed them to me when I first came home.

"Q. And she gave them to you on the 2d of May, and told you to see an attorney and bring an action to have Mr. Butler sign them? A. Yes, sir.

"Q. And when did you see an attorney? A. On the same day I went to Belleville and seen Mr. Alexander.

"Q. She gave you these deeds for the purpose of having you go to an attorney for her and have this matter brought up in court? A. Yes, sir.

"Q. She did n't give them to you for any other pur-pose? A. She did n't say·so; she gave them to me and only told me to go and see an attorney.

"Q. For her, or for you? A. For her.

"Q. For her? A. Yes, sir.

"Q. In this matter you were simply acting as her agent; is that right? A. Yes, sir."

The witness then testified that he took the deeds to Lebanon, where his father then was, and gave them to a notary to be presented for his father's signature; that the notary returned the deeds unsigned, and the witness then gave them back to his mother. He further testified:

"Ques. She was buried on the 20th day of May? Ans. Yes, sir.

"Q. At the time she was taken sick in her last illness, who was at home at that time? Were you? A. Yes, sir.

"Q. Who else? A. My wife and family.

"Q. You were living in the same house with her? A. Yes, sir.

"Q. After your mother's death, did you find these papers among her effects? A. Found them in a box in the bedroom.

"Q. And gave them to your attorney, Mr. Alexander? A. Yes, sir."

Mrs. Higbee, grantee in one of the instruments, testi-

fied that she never saw the deeds until after the death of her mother, when she saw them in the possession of her brother, George, but that she had heard her mother say about two weeks before her death that she had sent them to Mr. J. T. Butler and that he would not sign them.

Mrs. George E. Butler testified:

"Ques. Was there a sewing machine at your house? Ans. Yes, sir.

"Q. Who owned it? A. It was mine.

"Q. Where was it kept? A. In the bedroom; in my room.

"Q. At any time did you see Barbara E. Butler put some deeds in the drawer of this machine, or did she have you put them? A. She had me put them in the drawer of the machine.

"Q. What did she say at the time? A. She said for me to take care of them; that they were deeds.

"Q. Did you find them there after her death? A. Yes, sir.

"Q. What did you do after you found them? A. I gave them to Mr. Butler.

"Q. That is, your husband? A. Yes, sir.

"Q. What was done at the time she gave you those deeds and told you to take care of them? A. You mean she told me to put them in the machine drawer?

"Q. Yes. A. Well, she brought the deeds in from the mail, and they were in an envelope, and she says 'these are the deeds,' and she told me to put them in the machine drawer.

"Q. And you put them in the machine drawer? A. Yes, sir.

"Q. And that was all that was said and all that was done? A. Yes, sir.

"Q. And that is all that you know about them being in there? A. Yes, sir.

"Q. You don't know whether it was after she died or before? A. No.

"Q. What is your best recollection? Was it before or after? A. Before, I believe.

"Q. You say now you went to the sewing machine and got them before her death? A. I said I did n't say it was before, but I think it was.

"Q. How long before? A. Well, I don't know how long."

It will be noticed that George E. Butler testified that he found the deeds in a box in his mother's room after her death, and that his wife at first testified that she took them from the machine drawer after the mother's death, but afterward said that she believed it was before the mother's death. No irreconcilable conflict appears here, for George E. Butler said that in March his mother showed him the deeds and that they were then in the machine drawer. It appears that they were taken by him to Lebanon early in May, and then returned to his mother. This is consistent with the fact that they were found in her box after her death.

The testimony of neither witness proves or tends to prove a delivery. That of George E. Butler clearly indicates that his mother at all times had the control and dominion of the papers and was giving directions with a view of procuring her husband's signature, evidently considering them incomplete without it. The son caused an attachment to issue against his father to compel him to sign the papers, commencing the proceeding six days after his mother's death. This would indicate that such proceeding was contemplated by her, resulting from the legal advice she had, as he testified, directed him to obtain. She died rather suddenly, leaving the instruments still incomplete. The testimony of Mrs. George E. Butler fails to show any delivery or attempted delivery. The papers came in from the mail; mother and daughter-in-law were members of the same household; the younger woman was asked to put them away, and the machine drawer was made the receptacle. She was given no order, direction or authority as custodian. If she took them out before the mother's death and gave them to her husband, it was not a valid delivery, for the consent of the grantor had not been given. If she took them out

after the grantor's death, she had no authority to deliver them to the grantees.

There is some additional evidence that it is claimed bears upon this question of delivery. The assessor testified that in the spring of 1908 Barbara E. Butler told him to assess the place—referring to this land—to her or in her name. Neighbors testified that shortly before her death she told them that she had deeded the place to her son and daughter; 160 acres to the former, and 40 acres to the latter. It is true she had signed and acknowledged the instruments, and upon some issues the testimony might be important; but here the facts are stated by one of the grantees himself and by his wife, relating just what the grantor did, and showing the disposition made of the instruments, from which it clearly appears that no delivery was made.

The appellees rely on *Wuester v. Folin,* 60 Kan. 334. In that case it was held:

"Before a deed can operate as a valid transfer of title there must be a delivery of the instrument which becomes effective during the life of the grantor." (Syllabus.)

It is true that it was also said that "an unconditional delivery to a third person for the use and benefit of the grantee, where the grantor intends to devest himself of the title and to part with all control over the instrument, is ordinarily a sufficient delivery" (syllabus), but here there is no evidence of any delivery to a third person for the use or benefit of the grantees. Mrs. George E. Butler, when told to put the papers in the drawer, was not made a custodian for the grantees, nor given any charge concerning the papers except to put them away as directed. There is no evidence that George E. Butler was given any custody or other authority over them except to consult an attorney and have them executed by his father. That he so understood it is shown by the fact that he returned them to his mother.

While delivery is largely a matter of intention, still it must appear, as stated in *Wuester v. Folin*, supra, that the deeds have passed beyond the control of the grantor. In this case it distinctly appears that they had not. The grantor was exercising an active control over them a few days before her death, and they were still under her dominion and in her possession when death came. Whether she would have delivered them had she lived and been finally convinced that her husband would not join or could not be made to join in their execution we may never know. The fact that her purpose was to deliver the instruments if he signed them does not prove that she would have done so if his signature could not have been obtained. And if it should be supposed that she intended to deliver the deeds in the future, whether he united with her or not, that would not prevent her from changing her purpose at any time before the delivery was made. But all this is elementary. It would be a dangerous precedent to hold that a delivery is shown by the evidence in this case. As there was no delivery of the instruments, an interpretation of their terms will not be attempted.

A question of practice is presented. There is no dispute concerning the interests of the respective parties, if the alleged conveyances are held inoperative. The question of delivery has been fully tried. Upon undisputed facts, appearing from the evidence given principally by the parties claiming under the instruments, they are inoperative for want of delivery. There was no accident or surprise, nor any ruling that led the parties opposing partition to withhold evidence; all facts appear to be fully presented, leaving only a question of law to be decided. Section 581 of the code of 1909 provides that the supreme court shall "render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to tech-

nical errors and irregularities in the proceedings of the trial court." The former code (§ 559) provided:

"In cases decided by the supreme court, when the facts are agreed to by the parties, or found by the court below or a referee, and when it does not appear by exception or otherwise that such findings are against the evidence in the case, the supreme court shall send a mandate to the court below directing it to render such judgment in the premises as it should have rendered on the facts agreed to or found in the case." (Gen. Stat. 1901, § 5045.)

It was generally held that under this provision judgments could be ordered by this court only when the facts had been agreed to or found. The omission in section 594 of the code of 1909 of that part of the old section quoted above indicates an intention to give the court power to order the proper judgment when it can be done in furtherance of justice and without the denial of legal rights. Section 307 of the code of 1909, providing for new trials upon the order of a district court, directs that "a new trial shall not be granted as to any issues in a case unless on the pleadings and all the evidence offered at the trial and on the motion for a new trial the court shall be of the opinion that the verdict or decision is wrong in whole or in some material part, and the new trial shall be only of the issues as to which the verdict or decision appears to be wrong, when such issues are separable." The provisions of the revised code to which reference has been made indicate the legislative purpose to expedite procedure, and avoid new trials of an issue once fairly tried after a sufficient opportunity to present the case, where a proper judgment has been rendered or may be ordered. No reason appears why an issue fully and fairly tried should be retried when the facts clearly appear upon the hearing in this court, although shown by evidence instead of findings.

The judgment is reversed, with directions to enter

judgment for partition among the parties according to their respective interests, unaffected by the instruments referred to, which are held to be inoperative for lack of delivery.