J. ELMORE, *Appellee*, v. W. K. FANNING, *Appellant*.

No. 17,206.

SYLLABUS BY THE COURT.

1. LIMITATION OF ACTIONS—*Sunday Excluded.* Where the last day in the period prescribed by statute for commencing an action is Sunday, an action commenced on the following day is not too late.

2. ——— *Payment by Coöbligor—Agency.* Where one of two joint makers of a promissory note makes a payment thereon shortly after the note becomes due merely as the agent of the other, and with his money, and at the same time states to the holder that the money so paid belongs to his coöbligor, for whom and at whose request he is paying it, such payment does not affect the operation of the statute of limitations as to himself—it being that of the one for whom he is acting as agent.

3. ——— *Same.* A joint maker of a promissory note who delivered the money to the holder, in the circumstances stated in the above paragraph, was not bound to declare that the payment was not made for himself, that being the natural implication from his declaration that he made it for the other and with his money; nor was he required to warn the holder that the time in which an action might be brought against him would not be enlarged by such payment.

Appeal from Rush district court. Opinion filed October 7, 1911. Reversed.

*S. I. Hale*, for the appellant.

*W. H. Russell*, and *Frank U. Russell*, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action against the joint makers of a promissory note to which is attached a mortgage upon a growing crop of wheat. The note by its terms became due August 1, 1904. On August 29, 1904, W. K. Fanning, one of the joint makers and who was in fact a surety, delivered to the payee $55, and informed him, and he then knew, that the money was

the proceeds of the mortgaged wheat which belonged to M. E. Fanning, the other joint maker, and that the payment was made at his request. The payment was indorsed upon the note. August 29, 1909, was Sunday, and this action was brought on the following day. W. K. Fanning appeals from a judgment rendered against him, and contends, first, that the action is barred because it was not brought within five years from the date of the payment; second, that the payment made for the other joint maker did not extend the period of limitation as to the appellant within the meaning of section 23 of the code, and that the cause of action was barred.

The first contention can not be sustained. While the statute provides that such an action must be brought within five years after the cause of action shall have accrued, the further provision is made that "the time within which an act is to be done shall be computed by excluding the first day and including the last; if the last day be Sunday, it shall be excluded." (Civ. Code, § 747.) Construing these provisions together there is no room for controversy, and it must be held that this action was brought within the time allowed after payment was made.

It remains to be considered whether the effect of the payment made by W. K. Fanning as agent for his co-obligor was to extend the period of limitation as to the former. Upon this question the court stated as a conclusion of law:

"That the defendant by personally and physically making the payment on August 29, 1904, on the note in question, of which he was joint maker, without any expressed reservation at the time, continued the statutory period of limitation upon the note, both as to himself and his comaker, until five years from that date."

It is the rule in this state that:

"Partial payment made by one debtor on a note, will not suspend the running of the statute of limitations in

favor of the other debtors thereon, although the party paying be. the principal debtor, and the others only sureties." (*Steele v. Souder,* 20 Kan. 39, syl.)

It is contended that as the appellant delivered the money, although done for another, it should be considered as a payment made by him within the meaning of the statute. The payee, however, knew that the money was the proceeds of the wheat belonging to the other joint maker and that it was given to him by the appellant for his son; in other words, the creditor knew that the appellant made the payment as agent for his coöbligor. While the statute provides that "when any part of the principal or interest shall have been paid . . . an action may be brought . . . within the period prescribed for the same, after such payment" (Civ. Code, § 23) the rule declared in *Steele v. Souder,* supra, limits the application of the statute to the debtor who makes the payment, and the statute continues to run unaffected by such payment in favor of a coöbligor. The question then is whether the payment in this instance is to be construed as that of the person who delivered the money or the one whose money it was and who ordered it to be paid, or of both. It is a general principle that what a person does by his agent is to be held as his own act, and not that of the agent, and in this instance the fact that the payment was made for M. E. Fanning was expressly stated and was the fact. It is not perceived why the appellant was bound to declare that the payment was not made for himself, that being the natural implication from his statement that it was made for another. At that time the note was only a few days past due. It can not be presumed that either party had then in mind the possible effect of the statute of limitations, and an affirmative declaration by the appellant that his act in delivering the money should not be construed as enlarging the period of limitations would have been, if not impertinent, at least unusual. Nothing in the cir-

cumstances as they existed at that time seemed to call for such a statement. The appellant merely delivered the money for his son as requested, and fairly and truthfully stated all the facts that ordinarily would be stated in such a transaction, just as any other person might have done who sustained no relation to the note.

A payment, to toll the statute, must be made under such circumstances as to amount to an acknowledgment of an existing liability. (*Shanks v. Louthan,* 79 Kan. 363, 365, 99 Pac. 613.) Such acknowledgment must be distinct, unequivocal, and without qualification (*Durban v. Knowles,* 66 Kan. 397, 71 Pac. 829), and it must be made by the obligor against whom the statute is sought to be tolled, or by some one at his direction (*Good v. Ehrlich,* 67 Kan. 94, 72 Pac. 545). The failure of the appellant to express some reservation of his rights falls far short of an acknowledgment or promise to pay, and besides the statute requires a writing to make such acknowledgment or promise effectual; and the payment being made for another person and with his money, and so proclaimed, can not, as we have seen, be construed to be a payment by the appellant. Neither by words, acts nor silence is he estopped from claiming the benefit of the statute. He revealed the truth, and concealed nothing that in law or morals he should have disclosed. It would have required rare and singular forethought and caution on his part to anticipate a possible delay of four years and eleven months in enforcing payment of this note, and to prompt him then and there to lay the foundation of a defense to a possible action by solemnly warning the payee at that early day that he reserved the right to make it. It is true that in *Steele v. Souder,* 20 Kan. 39, the fact appeared that the payment by one joint maker was made without the knowledge or assent of the other, and in that respect the case differs from this. But there can be no legal significance in yielding or refusing assent to an act which the party has no right to

interfere with or prevent. The note was due and the coöbligor had a perfect right and it was his duty to pay it. Objection would have been vain, and knowledge is immaterial. In *Shanks v. Louthan,* 79 Kan. 363, 99 Pac. 613, the application of rents by the mortgagee in possession to the payment of interest on the mortgage without the mortgagor's knowledge or direction other than such as might be implied from the situation presented, was held not to remove the bar of the statute.

A statute of Vermont provided:

"If there shall be two or more joint contractors or joint executors or administrators of any contractor, no one of them shall lose the benefits of the provisions of this chapter, so as to be chargeable by reason only of any payment, made by any other of them." (Vt. Gen. Stat. 1862, ch. 63, § 28.)

In a case similar to the one now under consideration it was said in the opinion:

"Under the provisions of this section, the only question is whether the payment of August 24, 1871, was made by the defendant within the meaning of the statute. He passed the money to the plaintiff. But it is found that it was the money of Frank W. Corliss, another signer of the note, and that the defendant handed the money to the plaintiff at his request, and so informed the plaintiff at the time. This made the defendant the agent of Frank W. Corliss in making the payment, of which fact the plaintiff had knowledge, so that he was not misled in regard thereto. If the plaintiff has slumbered upon his rights against the defendant by reason of that payment, it is his own fault, and not the fault of the defendant. When the defendant informed the plaintiff that the money for that payment was furnished by Frank W. Corliss, and that he was passing it over to him at the request of Frank W., in legal effect he told him that it was a payment made by Frank W., and that he had no part in it, except as the agent of Frank W. He had no occasion to go further, and enter a protest that he was not to be affected by it." (*Bailey v. Corliss,* 51 Vt. 366, 368.)

The Vermont statute appears to be a declaration of

the law on this subject substantially as it is held in this state.

In *Mainzinger v. Mohr,* 41 Mich. 685, 3 N. W. 183, a contrary result was reached under a statute substantially like the Vermont statute. In that case Mainzinger and Miller were joint makers of a note. A payment had been indorsed which apparently tolled the statute. The facts sufficiently appear in the following quotation from the opinion:

"Both came to him together on the business of making a payment upon the note, and it was made and correctly credited not merely in the presence but with the participation of both. Let it be admitted that the money was Miller's and that he alone handed it over, and I can not see that this precludes the payment being a joint act. It did not concern Mohr whose money was paid to him, or from whose hands he received it; and any joint payment, though all the debtors were present, would usually be made in the same way. . . . Naturally he would suppose that the money paid was the money of the one who, as between himself and his creditor, ought to pay it; but he was only concerned with the fact that what they did was by coöperative and conjoint act. He had therefore a right to understand that this was a mutual payment and that the parties thereby mutually renewed their promise of payment. If Mainzinger at the time had in his own mind any purpose to consider and treat the transaction as being something different from what the appearances indicated, it was his duty to notify Mohr that Miller alone was making the payment, and Mohr would then have been put on his guard and would have had only himself to blame if he had lost his remedy by subsequent delay." (p. 687.)

In the same opinion, *Quimby v. Putnam,* 28 Maine, 419, holding that a payment by one of two joint makers could not be considered the payment of both merely because of the other being present when it was made, was quoted with approval. The Michigan decision is easily distinguished from the case under consideration by the fact that the creditor here was expressly informed that the payment was not mutual, and that it was not there-

fore a mutual extension or renewal of the note. Besides, in the Michigan case the note was already barred, and the duty of the party who does not wish to renew the obligation to give notice of that fact may properly arise from circumstances that would be insufficient to create such a duty where the obligation is still in force, and where the possible defense of the statute of limitations can not reasonably be supposed to be in the mind of either party.

The court found that the payment was made from the proceeds of the mortgaged wheat which the appellee knew belonged to M. E. Fanning alone, and the uncontradicted evidence was that when the payment was made the appellant stated to the appellee that the money had been sent by M. E. Fanning. It is not claimed that the fact proved by this evidence was or can be controverted, or that the fact is otherwise, or that the case was not fully and fairly tried. A new trial is therefore unnecessary. (*Worth v. Butler*, 83 Kan. 513, 112 Pac. 111.)

Upon the facts found by the court and the undisputed evidence the judgment is reversed and the cause remanded with directions to render judgment for the defendant.