No. 27,902.

Robert Turner, *Appellee,* v. Maude Close, *Appellant.*

(264 Pac. 1047.)

#### SYLLABUS BY THE COURT.

1. Witnesses—*Transactions With Persons Since Deceased.* The slight deviation in the evidence from the strict rule respecting transactions had with deceased persons held not to constitute prejudicial error.
2. Deeds—*Delivery—Presumption from Acknowledgment and Recording.* The execution, acknowledgment and recording of a deed by the grantor raises a strong presumption of delivery.
3. Same—*Delivery — Intentionally Recording by Grantor.* Where a deed is intentionally recorded by the grantor a manual delivery of the deed thereafter is not necessary to make it effectual.
4. Same—*Delivery—Effect of Possession by Grantor After Recording.* Retaining exclusive possession of a deed by the grantor after having recorded it does not necessarily negative the theory of previous delivery.
5. Same—*Delivery—Sufficiency of Evidence.* The undisputed facts in this case considered and held to justify the conclusion that there was an effectual delivery of the deed in question.
6. Same—*Delivery—Presumption from Delay in Asserting Rights.* The long silence and unusual delay of 38 years before attempting to set aside the deed savors strongly of estoppel and is the strongest kind of a circumstance in showing delivery of a recorded deed.

Appeal from Reno district court; William G. Fairchild, judge. Opinion filed March 10, 1928. Reversed.

*C. O. McGill* and *B. A. Earhart,* both of Hutchinson, for the appellant.
*Carr W. Taylor,* of Hutchinson, for. the appellee.

---

Appeal and Error, 4 C. J. p. 999 n. 22. Deeds, 18 C. J. pp. 207 n. 7, 413 n. 86, 419 n. 53, 438 n. 62; 38 L. R. A. n. s. 944; 8 R. C. L. 1004.

The opinion of the court was delivered by

Hutchison, J.: The plaintiff in this action, Robert M. Turner, seeks to set aside a deed made by him to his wife many years ago and quiet his title to the land against his adopted daughter, who claims to have inherited an interest in the land on the death of her mother, the wife of the plaintiff, and the interest of her adopted brother by conveyance from him. The trial court found in favor of the plaintiff and against the defendant, and defendant appeals.

The case involves the question of the competency of testimony given by plaintiff said to be respecting a transaction with a deceased person (R. S. 60-2804); also, questions of delivery of the deed, and estoppel.

The undisputed facts are that the land in question is a part of a government homestead in Reno county proved up by the plaintiff, for which he received a patent, and which he and his wife occupied as a homestead. On July 3, 1888, he procured an attorney named Jeff Bowers, now deceased, then residing at Sylvia, in Reno county, to make out a quitclaim deed for him conveying this quarter section to his wife. The consideration named was $1,000. It concludes with the expression, "Executed and delivered in presence of Jeff Bowers." It was acknowledged before a notary the same day. Ten days later it was left by the plaintiff with the register of deeds of Reno county to be recorded, and was recorded in book 20 on page 473, and by the register of deeds returned to him. He then placed the recorded deed in a little silver-mounted box which he had given to his wife, and on top of which the jeweler had written his wife's name. It was left in a sideboard, but not locked. It was really her box, but she never had access to it, and he never gave her the deed. He and his wife continued to live on the land, and he still resides thereon.

In 1893 and 1894 he and his wife regularly adopted two children, a boy and a girl, who assumed the surname of the family. The girl, Maude Close, now married, is the defendant herein. The plaintiff did the farming, received the profits, paid the taxes, and maintained the improvements on the place. A part of it was sold by him to Barney McKeown, and his wife and he executed the deed, her name appearing first in the body but second in the signatures. The boy grew to manhood and went to Oklahoma. The girl, less

than a year old when adopted, stayed with the adopted parents on the home place all her life, except a few months, until served with summons in this case. The plaintiff several times offered to purchase the land from his wife. The wife died November 14, 1921, without a will. She had no children except the adopted boy and girl. After his wife's death plaintiff leased the farm for about eight months to the daughter and her husband. June 1, 1926, he leased the land to E. E. Nelson and H. H. Nelson for five years, with privilege of five more. A copy of the lease prepared and signed by him and introduced in evidence begins as follows: "This indenture, made this 1st day of June, in the year of our Lord 1926, between R. M. Turner and Maude Close, parties of the first part." It names the Nelsons as second parties and describes the land in question. Some time after the death of the wife and the commencement of this action the adopted son conveyed to the adopted daughter an undivided one-fourth interest in this land. The plaintiff at the time of the trial was 76 years old. He was the only witness who testified in his behalf.

Now a few statements as to controverted facts. Plaintiff maintained that he made out the deed to his wife and had it recorded because he was in the livery business, which at that time was not very safe, and he wanted his wife to have the farm if anything happened to him, and had no intention of conveying the land to her except to be effective at his death. He says it was never talked of between them and he never in any way recognized her as being the owner of it, or after her death recognized the adopted daughter as having any interest in it; that he never received any consideration for the deed to his wife, but just put it as $1,000 to make it safe and because there was at that time a mortgage of $1,000 on the place. On the other hand, the adopted daughter testified, as did also her adopted brother, the hired man, and several neighbors, to numerous quarrels between the plaintiff and his wife about the ownership of this land, and the daughter and others testified as to offers being made by plaintiff to the daughter for her interest in the land and to conversations about her signing bonds with him because of her interest in the land. The conflicting testimony last above noted will not engage our attention in this case, except for the consideration of the first above-stated assignment of error, viz., Was the testimony of the plaintiff incompetent because it was

respecting a transaction had with a person since deceased, as described in R. S. 60-2804? One question and answer would very properly be subject to such objection:

"Q. I will ask you, Did you ever at any time during your wife's lifetime deliver that deed to her? A. No, sir."

This was certainly a transaction within the meaning of the rule of incompetency and one intended to be excluded by the terms of the statute, but, upon objection being made, the court specifically directed that he might only testify as to what he did, and to such question an answer was given. The original answer was not stricken out, but the trial was before the court and there could be nothing prejudicial under such circumstances.

Was there a delivery of the deed? That is the important question in this case. The trial court found there was no delivery, and therefore set the deed aside. The question of delivery is first a question of fact and then a question of law. In this case the facts concerning delivery of the deed are nearly all undisputed, as herein set out in detail. If the substantial and essential facts as to delivery are undisputed then it becomes a question of law.

"The question of the delivery of a deed is largely a question of intention, ordinarily to be determined by the jury or trial court as a question of fact, but when the facts are not controverted the question should be determined by the court as a question of law; and when the facts have been fully tried, leaving only questions of law to be decided, this court may direct the entry of a proper judgment—following *Worth v. Butler,* 83 Kan. 513, 112 Pac. 111." (*Hoard v. Jones,* 119 Kan. 138, syl. ¶ 9, 237 Pac. 888.)

"Where an issue was fairly tried after full opportunity had been afforded to present the case, and there was no accident or surprise nor any ruling causing a party to withhold his evidence, and all the facts appear to be fully presented by the evidence, leaving only questions of law to be decided, this court may, under the revised code, in the furtherance of justice, direct the entry of a proper judgment by the district court when the judgment of that court is reversed." (*Worth v. Butler,* 83 Kan. 513, syl. ¶ 3, 112 Pac. 111.)

This court has frequently said the question of the delivery of a deed is largely a matter of intention, and intention is manifested by acts and words.

" 'What constitutes a sufficient delivery of a deed is largely a matter of intention, and the usual test is, Did the grantor by his acts or words, or both, manifest an intention to make the instrument his deed, and thereby divest himself of title?' (*Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490.)" (*Doty v. Barker,* 78 Kan. 636, syl. ¶ 1, 97 Pac. 964.)

Actions usually speak louder than words. They certainly do in this case—first, recording the deed, which obviated the necessity of a manual delivery; second, by letting the matter rest in that shape for more than thirty-three years before his wife died and approximately five years thereafter.

"The recording of the deed by the grantor made it effective as to all persons benefited by it who did not dissent." (*Miller v. Miller,* 91 Kan. 1, syl. ¶ 5, 136 Pac. 953.)

"The execution, acknowledgment and recording of a deed raises a presumption of delivery, and the recording of the same with the accompanying circumstances justified the inference of the trial court that the deed had been delivered.

"The fact that after recording the deed it was placed and kept in the grantor's box in the vault of a bank does not necessarily negative the theory of a previous delivery, as the grantor had reserved a life estate to himself in the land conveyed." (*Conner v. Cole,* 112 Kan. 517, syl. ¶¶ 2, 3, 211 Pac. 615.)

The keeping of the deed after recording it in this case in a box belonging to his wife, but in his possession and control, would not negative the delivery effected by the recording. What purpose could there be in keeping the deed after the record shows the transfer? It makes no difference how it happened to be recorded, whether by accident, mistake or fraud. There are only two ways to remedy the trouble—by getting a reconveyance from the grantee or by asking the court to set it aside. In this case there is no claim by the plaintiff that he ever asked his wife for a deed during her life of thirty-three years after it was recorded, or thought it necessary to come into court for five years after her death, but he did offer to purchase the land from his wife. Counsel for appellee urge that the case of *Bruce v. Mathewson,* 97 Kan. 466, 155 Pac. 787, is decisive of this case, but there the recording was not done by the grantor, but was against his express orders and directions. The strong presumption of delivery in this case stands without anything to shake or disturb it or to show any different intention than a delivery. We think the undisputed facts in the case are in themselves sufficient to compel the conclusion of law thereon that there was a complete delivery.

"It is not necessary that there should be a manual delivery of a deed to make it effectual. A constructive delivery or any words or acts showing an intention on the part of the grantor that the deed shall be considered as completely executed and the title transferred are sufficient.

"The recording of the deed in question, as well as other acts of the parties

showing an intention of the parties to treat the instrument as a conveyance and as a passing of the title, are held to be sufficient proof of the delivery by the grantor and acceptance by the grantee." (*Kelsa v. Graves,* 64 Kan. 777, syl. ¶¶1, 2, 68 Pac. 607.)

The decision thus reached might very properly dispense with the necessity of considering the third assignment of error, viz., that the plaintiff is estopped by his unusually long delay in making any move to set aside the deed before or after her death, but there are two Kansas cases which are quite decisive in cases of such delay without any good reason being assigned. In one of them it was only thirteen years that the grantor remained silent after recording the deed in favor of her minor child before she undertook to dispose of the land otherwise, and the court said: "The situation savors strongly of an estoppel, both as to Mrs. Smith and as to her would-be devisee by the will." (*Pentico v. Hays,* 75 Kan. 76, 81, 88 Pac. 738.) The other case was one to declare a trust and recover certain real estate.

"Courts of equity seldom encourage speculations in stale and doubtful claims; they seldom encourage the overturning of settlements voluntarily made and long acquiesced in; they seldom encourage the disturbance of titles long vested, long enjoyed, and where all the parties for many years have acted as though they considered all questions with reference to titles as equitably settled and permanently at rest; and where many of the original parties and their witnesses have passed away, and much of their evidence in the meantime has been lost or destroyed; and where the titles can no longer be examined by courts of equity, or any courts, with that certainty of doing justice which could have been done at the beginning, while all the parties and their witnesses were living, and while all the evidence was fresh and easily to be obtained. Peace and repose are generally better in such cases than disturbance and turmoil." (*Yeamans v. James,* 29 Kan. 373, syl. ¶ 5.)

The judgment of the district court is reversed and the cause remanded with directions to render judgment for the defendant in accordance with the views herein expressed.